IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 6, 2007

## STATE OF TENNESSEE v. DEDDRICK PARKER, TAURUS DRIVER, and TREMAINE ROBERSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-02632    John P. Colton, Jr., Judge**

---

**No. W2006-00876-CCA-R3-CD  - Filed July 30, 2007**

---

The defendants, Deddrick Parker, Taurus Driver, and Tremaine Roberson, were indicted for two counts of aggravated robbery, a Class B felony, and five counts of aggravated assault, a Class C felony.  Each defendant was convicted of both counts of aggravated robbery, and Roberson was also convicted of all five counts of aggravated assault, Parker of two counts, and Driver of two counts of the lesser-included offense of facilitation of aggravated assault.  Roberson, Parker, and Driver were sentenced as Range I, standard offenders to consecutive sentences totaling thirty-five, twenty-four, and twenty years, respectively.  In this consolidated appeal, they raise three issues: (1) the evidence is insufficient; (2) the trial court erred in its application of enhancement factors and in imposing consecutive sentencing; and (3) the trial court erred by not timely disclosing its prior relationship with an assault victim.  Following our review, we remand for resentencing as to those sentences imposed on each defendant which exceed the minimum, affirm the remaining judgments, and remand to the trial court for a determination as to whether the sentences should be served concurrently or consecutively.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Paul K. Guibao, Memphis, Tennessee, for the appellant, Deddrick Parker; Charles Edgar Waldman, Memphis, Tennessee, for the appellant, Taurus Driver; and Gregory Thomas Carman (on appeal) and Matthew John (at trial), Memphis, Tennessee, for the appellant, Tremaine Roberson.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dennis Johnson and Muriel Conner, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendants were tried jointly for the January 17, 2004, aggravated robbery of John Carruthers, an employee of the Cash America Pawnshop in South Memphis, and of one of the pawnshop's customers, Ingre Calvin; for the aggravated assault of two persons in the pawnshop, Darrick Bowden, a cashier, and eight-year-old customer Jeffrey Calvin; and for the aggravated

assaults of motorist Stanley Kline; his wife, Sandra Kline; and their adult, handicapped son, Louis Kline.

## State's Proof

At the defendants' trial, Darrick Bowden testified that he was working behind the counter of the pawnshop on January 17, 2004. Between noon and 1:00 p.m., two men with guns, wearing masks, gloves, and dark clothing, entered the store and yelled for everyone to "get down." Bowden laid down on the floor behind the counter and heard the men running past him, the cash registers being "popped," the store's glass jewelry-display cases being broken, and one of the robbers yelling, "Where's the safe? Where's the safe?" When the alarms on the display cases went off, the robbers fled. Bowden described one of the robbers as a "heavy-set guy" and the other as "slim." He said that money and jewelry were taken during the robbery. Bowden said that during the robbery, he was "just hoping, you know nobody get agitated [sic] and things go wrong," saying that he was afraid "somebody [would] get shot" and that "it could have been" him. Another of the victims, John Carruthers, was wo    rking with Bowden that day and operating a cash register when the robbery occurred.

Shaun Bridgeforth, also an employee of Cash America Pawnshop, testified that he saw one of the robbers enter the store carrying a gun and wearing a black mask and described the robber as being of "regular height" and a "little chubby." He knew there was more than one robber in the store but remained face-down on the floor until they left.

Ingre Calvin testified that she and her young son and daughter were at the checkout counter of the pawnshop when a man approached her from behind and said, "Get down." She described the man as "kind of stocky" and said he was wearing a tan lumber jacket, a blue "skull cap," and "a green, homemade face mask." Ms. Calvin said she was scared and "thought [she] was going to get shot or something." Her purse, which had been on the counter, was missing after the robbery. She said she had approximately $1500 cash, her checkbook, and two credit cards in her purse.

Ingre Calvin's son, Jeffrey Calvin, a fifth grader, testified that he was at the counter in the pawnshop when three men came in and told him to "get down." He complied but "peeked a little" and saw one of the men pull up his black mask and use a hammer to "bust the glass" in the jewelry cases. Calvin saw the robber's face and looked up at him until the alarm sounded and the robbers left. He later viewed photographic lineups at the police station and identified Roberson as the man he saw breaking the glass. Asked how he felt during the robbery, Calvin said that he "thought they [were] going to hurt somebody" because they had a "hammer and all that." He said that he was scared and that his sister was crying after the robbers left.

Lieutenant Terry Lyons of the Memphis Police Department testified that approximately $1,550.23 was stolen from the pawnshop and $1,588.00 from Ingre Calvin. He said that the robbers wrecked their getaway vehicle, a white Chevrolet Caprice, at the intersection of South Third Street and East Mitchell Road, approximately 100 yards from the pawnshop. Inside the car, the police discovered felt jewelry displays, loose pieces of jewelry, and cash. The police also recovered a pistol and a bag containing $520 on the sidewalk of Meadowbrook Road.

Lieutenant Lyons said that a witness, Mr. Hughes, told police he followed a man who fled from the scene of the automobile accident to a nearby house located at 49 West Belle Haven Road. Lyons said that he and three other officers went to the house where they found three males, whom he identified as the defendants, matching the physical descriptions of the robbery suspects. They were taken into custody and transported to the police station where Lieutenant Lyons watched the pawnshop's surveillance videotape of the robbery and noted that, like the perpetrators shown on the

tape, Parker was wearing white tennis shoes, Driver was wearing black tennis shoes, and Roberson was wearing blue tennis shoes. Lieutenant Lyons said that he showed a photospread to Mr. Hughes, who identified Driver as one of the men he saw get out of the backseat of the Caprice at the intersection of Third and Mitchell.

The pawnshop's market manager, John Louis Griffin, testified that the jewelry displays and jewelry found in the wrecked, white Chevrolet had been taken from the pawnshop.

Ronald McKinney testified that on January 17, 2004, he was traveling south on Third Street when a four-door, white Chevrolet hit his vehicle and spun it out of control at the intersection of Mitchell Road. Three men got out of the Chevrolet and started walking down Mitchell Road. When McKinney approached the driver of the Chevrolet, whom he described as "heavier than the other two," the man "raised up his shirt to let [him] know he had a gun." McKinney immediately stopped following them. On February 20, 2004, McKinney viewed photographic lineups at the police station and identified Parker as the man who flashed the gun. At trial, he testified that there was "no doubt in my mind was the heavyset guy that had the gun [sic]."

Claudell Hughes testified that he witnessed the automobile accident at Third Street and Mitchell Road involving an older model white car and a sports utility vehicle. Three young men got out of the white car and walked over to the sidewalk. Two of the men returned to the car and retrieved some plastic bags. All three then started walking west on Mitchell Road, and Hughes followed them in his car because they were leaving the scene of the accident. At one point, as he passed the three men, one of them approached him with a gun in hand. Hughes then sped up, drove around the block, and "came back up behind them" so they would not know he was still following them. He observed the men split up and continued following one of them who was "going down between the houses." He watched the man stop at a house on West Belle Haven Road and talk to another man. Later, he showed a police officer the house where the man had stopped. Hughes viewed a photographic lineup and identified Driver as the backseat passenger who got out of the white car. However, Driver was not the one whom Hughes ultimately followed. Hughes was not able to identify any of the defendants in the courtroom.

Stanley J. Kline, a Memphis attorney, testified that he was in his car with his wife and adult, handicapped son, stopped behind a bus on Third Street, when he heard a "[v]ery loud, violent" automobile collision and saw an older model, white car roll to a stop on Mitchell Road. Three black males got out of the car and began running westbound down Mitchell Road. Kline called 9-1-1 and then followed the men at a distance. When he turned northbound on Meadowbrook, the men had stopped running and Kline slowly came to a stop next to one of them. The other two men were standing near his car, and one of them "had a silver pistol in his right hand and whirled around and fired a shot" directly at Kline's car. The bullet struck the hood, ricocheted off, and missed the windshield.

After being shot at, Kline retrieved his own handgun from his glove compartment and got out of his car. Kline was "about to shoot" the man closest to him, whom he described as "overweight," but did not because the man dropped the bag he was carrying and "a lot of cash flew out and a pistol." The other two men ran, but, when the larger man tried to run, he "hit some mud or wet stuff on the yard and fell flat on his face spread-eagled." Weapon leveled, Kline stood one foot behind the man and told him not to get up, but the man pushed himself up, looked at Kline, grinned, and "ran off." Kline testified that the man had "crossed" front teeth and identified him as Parker after looking at his teeth in the courtroom.

Kline viewed photographic lineups at the police station the day after the incident but would not identify anyone because he wanted to see them "live." However, Kline testified that he got "a

-3-

good look" at all three men, and, according to him, the defendants were seated in the courtroom in the same order as they had been standing on the sidewalk when the shot was fired. He identified Roberson as the shooter. According to Kline, the defendants had altered their appearance "considerably" since the day of the incident, especially Parker, who appeared to have lost fifty or more pounds.

Kline's wife, Sandra Kline, testified that, after being shot at, she was "screaming at [her husband] to get out of there." She said that after he exited their car, she was "looking straight into the face of the heavyset guy with a gun and a bag." The day after the incident, reviewing photographic lineups at the police station, Mrs. Kline identified Driver as the man standing on the corner, Roberson as the man who shot at them, and Parker as the heavyset man. Mrs. Kline confirmed that the same men were the defendants on trial in the courtroom.

Sergeant Robert Scoggins of the Memphis Police Department testified that there were no positive results when fingerprint analysis was conducted on the car or the pistol recovered from the sidewalk on Meadowbrook Road. On the night of the offense, he executed a search warrant at the house where the defendants were apprehended, but no evidence relevant to the robbery was discovered. He also took statements from the defendants who identified alibi witnesses, but none of those named cooperated when he requested them to come to the police station to give statements.

Sergeant James T. Max of the Memphis Police Department testified that he interviewed Roberson on the day of the robbery. Roberson told him that he and Parker walked from the Valley Forge Apartments to the Corner Foods Store near Mitchell Road and Third Street, purchased two beers and a bag of potato chips, walked to a friend's house "on Rollins and then from there they went to his aunt's house where they were arrested." Roberson denied any involvement in the robbery. Sergeant Max later spoke with the Corner Foods Store employee who was working the afternoon of the robbery, and she could not confirm that Roberson or Parker had been in the store that day.

### Defense Proof

Roxie Lewis testified that she was working as a cook at the Corner Foods Store on January 17, 2004, and that Parker, whom she knew as "Lasagna Man," came to the store at "lunchtime." She could not remember if anyone else was with Parker that day.

Antonio Smith testified that all three defendants are his cousins and that on January 17, 2004, he picked up Driver and another cousin, Cory Parker, at about 12:30 p.m. and they went to the Southland Mall. He said they went to three stores before leaving the mall around 1:00 p.m. Smith said that, on their way home, they passed the pawnshop, saw "a whole bunch of police," and were laughing because they thought "somebody must have robbed the pawnshop or something." Smith then took Driver to his aunt's house at 49 West Belle Haven.

Cory Parker testified that Smith picked up him and Driver at about 12:40 p.m. on the day of the crime and took them to the mall. Afterwards, at about 1:30 p.m., they dropped Driver off at 49 West Belle Haven so he could watch a basketball game. Parker said that, later that day, he returned to the mall and viewed a surveillance videotape at one of the stores they had visited and identified Driver on the videotape. On cross-examination, he acknowledged that he is Defendant Parker's brother and the cousin of Driver and Roberson.

Defendant Driver testified that, on January 17, 2004, he went to the Southland Mall at approximately 1:00 p.m. with Cory Parker and Antonio Smith. Afterwards, they dropped him off at his grandmother's house at 49 West Belle Haven where he was arrested by detectives ten minutes later. Driver denied any involvement in the robbery.

-4-

Rose Parker testified that she lived at 49 West Belle Haven and that Roberson is her cousin and the other two defendants are her nephews. She said that, on January 17, 2004, Parker and Roberson arrived at her house at about 12:45 p.m. and Driver arrived at about 1:40 p.m. The defendants were at her house until the police came at approximately 2:00 p.m. Earlier that day, she had seen two men run across her front yard, one wearing a bright yellow jacket and the other a black, hooded pullover.

Chimarco Faulkner testified that Parker and Driver are his nephews and Roberson is his cousin. On the day of the robbery, Faulkner and Charles Glover were with Parker and Roberson for "a couple of hours" at Glover's house before dropping them off in front of the Corner Foods Store "a little after 1:00" p.m. Gaisha Faulkner testified that she was at 49 West Belle Haven when her nephews, Driver and Parker, and her cousin, Roberson, were arrested.

Defendant Parker testified that, on January 17, 2004, he left the Valley Forge Apartments with Roberson at approximately 11:25 a.m. and walked to Charles Glover's house where they stayed until "probably about 12:50" p.m. Later, while riding in Glover's car, he saw the woman who lived at the corner of Belle Haven and Meadowbrook and stopped to talk to her and her daughter. Afterwards, Glover took Parker and Roberson to the Corner Foods Store where Parker bought some beer. Parker and Roberson then walked back to Glover's house and then to his grandmother's house at 49 West Belle Haven, arriving at about 1:30 or 1:45 p.m. Parker testified that Driver arrived at the house approximately twenty-five minutes later. Parker denied robbing the pawnshop. He acknowledged he had lost some weight in the year preceding his trial because he found the food in jail disagreeable, saying that he weighed approximately 210 pounds on January 17, 2004, and was heavier than Roberson and Driver at that time.

Defendant Roberson did not testify.

Donell Powell testified that, at approximately 12:45 p.m. on January 17, 2004, as he was sitting in his car on West Dunbar Road, he saw, from his rearview mirror, three men run behind his car. The first two men were wearing hoods and looked like they were running from someone. Powell estimated the third man's weight at "about 300 pounds" and said he was carrying a long screwdriver and lagging behind the other two men. At the time, Powell was not aware of the pawnshop robbery and had not heard any gunshots but thought that the three men had been trying to steal a car or "carjack" someone. Shortly after seeing the three men run by, he saw Parker and Roberson, whom he knew from neighborhood barbecues as "Pooh Man" and "Huck," respectively, walking down East Dunbar Road. According to Powell, Parker and Roberson appeared to have "just come from the store because they had a bag with them." Powell testified that he was certain that the three men who had run by him earlier were not the defendants.

## ANALYSIS

### I. Sufficiency of the Evidence

As set out previously, the defendants each were indicted for two counts of aggravated robbery and five counts of aggravated assault, with John Carruthers, an employee of Cash America Pawnshop, as one of the aggravated robbery victims, and Ingre Calvin as the other. Darrick Bowden, Jeffrey Calvin, Stanley Kline, Sandra Kline, and Louis Kline were the victims in the aggravated assault charges. While the jury convicted each defendant of both aggravated robberies, only Roberson was convicted of all five counts of aggravated assault. Parker was convicted of two aggravated assaults, one against Darrick Bowden and one against Jeffrey Calvin, and Driver was convicted of two counts of the lesser-included offense of facilitation of aggravated assault against

Bowden and Jeffrey Calvin. The defendants argue that the evidence was insufficient as to their respective convictions.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). This rule applies when the determination of guilt is based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). Additionally, a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Aggravated Robbery Convictions

Each defendant was convicted of two counts of aggravated robbery, and we first will consider those convictions:

Aggravated robbery is robbery as defined in § 39-13-401:

> (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or

> (2) Where the victim suffers serious bodily injury.

Tenn. Code Ann. § 39-13-402(a) (2003); see also Tenn. Code Ann. § 39-13-401(a) (defining robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear").

"Deadly weapon" is also defined by statute as:

> (A) A *firearm* or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or

(B) Anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tenn. Code Ann. § 39-11-106(a)(5) (2003) (emphasis added).

As we will explain, we conclude that the evidence is sufficient as to the aggravated robbery convictions of each defendant. Jeffrey Calvin identified Roberson as one of three men who entered the pawnshop wearing masks and said that he used a hammer to break open jewelry-display cases. Darrick Bowden testified that John Carruthers was operating a cash register on the day of the robbery, that money and jewelry were taken, and that the two robbers he saw were armed with guns. Ingre Calvin testified that she was ordered at gunpoint to get down on the floor and that her purse was gone after the robbers left. Four additional witnesses, Ronald McKinney, Claudell Hughes, Stanley Kline, and Sandra Kline, made positive identifications of the three defendants and testified that they had handguns and wrecked their "getaway" car at Third and Mitchell before attempting to run on foot. John Louis Griffin confirmed that jewelry recovered from the wrecked car came from the pawnshop. The Klines also saw Parker drop a bag containing cash and a pistol that was later recovered by police. Finally, all three defendants were discovered at the house where Hughes saw one of the men run.

Viewed in a light most favorable to the prosecution, jurors reasonably could conclude that the defendants used deadly weapons to intentionally steal property from John Carruthers and Ingre Calvin. See Tenn. Code Ann. § 39-13-402(a)(1) (2003). Accordingly, the proof is sufficient as to the two aggravated robbery convictions of each defendant.

## B. Aggravated Assault Convictions

Next, we will consider the convictions for aggravated assault.

A person commits aggravated assault who:

(1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:

(A) Causes serious bodily injury to another; or

(B) Uses or displays a deadly weapon[.]

Tenn. Code Ann. § 39-13-102(a)(1) (2003); see also Tenn. Code Ann. § 39-13-101(a)(2) (providing in relevant part that a person commits assault by "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury").

### 1. Defendant Roberson

Roberson argues that the evidence is insufficient to support his convictions for the aggravated assaults of Darrick Bowden, Jeffrey Calvin, Stanley Kline, Sandra Kline, and Louis Kline.

Darrick Bowden testified that the two men he saw enter the pawnshop were armed with guns and, when ordered to the floor, he feared he would be shot. Jeffrey Calvin identified Roberson as one of the robbers. He said that Roberson had a hammer and that he thought the men were "going to hurt somebody." Stanley and Sandra Kline testified that Louis was in the car with them, and, as they followed the three defendants, Roberson quickly turned and fired his handgun at them, striking the hood of their car.

-7-

Viewed in a light most favorable to the State, this evidence is sufficient for a reasonable juror to conclude that Roberson intentionally or knowingly used or displayed a deadly weapon to make all five victims reasonably fear imminent bodily injury. See Tenn. Code Ann. § 39-13-102(a)(1)(B) (2003).

## 2. Defendant Parker

Parker argues that the evidence is insufficient to support his convictions for aggravated assault against Darrick Bowden and Jeffrey Calvin, asserting that because there was "no direct singular threat" made against Jeffrey Calvin, who was a witness to the robbery, this conviction cannot stand.

Darrick Bowden and Shaun Bridgeforth both described one of the robbers as heavyset and testified he had a gun. Three other witnesses, Stanley Kline, Sandra Kline, and Ronald McKinney, identified Parker as one of the men fleeing the wrecked car, testified that he had a pistol, and described him as heavyset. Jeffrey Calvin testified that he saw all three robbers and was afraid they were going to hurt someone.

Viewed in the light most favorable to the State, this evidence is sufficient for a reasonable juror to conclude that Parker knowingly displayed a deadly weapon to make those in the pawnshop, including Jeffrey Calvin and Darrick Bowden, fear imminent bodily injury. See Tenn. Code Ann. § 39-13-102(a)(1)(B) (2003).

## 3. Defendant Driver's Facilitation of Aggravated Assault Convictions

Driver argues that the evidence does not support his convictions for facilitation of aggravated assault against Darrick Bowden and Jeffrey Calvin.

Facilitation of a felony is defined as follows: "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2003).

As previously set out, we have concluded that the evidence was sufficient to support Driver's convictions for aggravated robbery of John Carruthers and Ingre Calvin. Accordingly, it is also sufficient to support his convictions for facilitation of the aggravated assaults committed by his codefendants during the robbery. A reasonable juror could conclude that Driver, if not armed himself, knew that Parker and Roberson were armed with handguns which they brandished during the robbery and that, by joining them, he provided substantial assistance in placing Bowden and Jeffrey Calvin in fear of imminent bodily injury.

## II. Sentencing

At the defendants' sentencing hearing, no proof was presented by the defendants and each was sentenced as a Range I, standard offender.

Before sentencing, the trial court discussed, apparently as to all three defendants, which enhancement and mitigating factors were applicable:[1]

[The] Court finds after review here that he cannot find any mitigating circumstances. It's been discussed during the trial and so forth that certain defenses were put up, but I have not been presented anything here in writing nor have I had any proof other than statements about possible mitigation.

The Court's reviewing the enhancement factors and finds that there could be several. I'm going to list some that I'm going to include here. One being the offense involved more than one victim. And [an]other being number five, that a victim of the offense was particularly vulnerable. And the reason for that is because we have a young child of nine years of age[2] and also another party in here who was a person who had a mental disability who was also a victim. And also that the . . . defendants employed firearms in the commission of these crimes, even though that was part of the . . . aggravated robbery charge. And also that these defendants seemed to have no hesitation about committing a crime when the risk of human life was high and people were threatened and people were in fear of their life. The crime also was committed under circumstances in which there was a potential for bodily injury to several of these victims. And that would be under enhancement number 17, I believe, under the 40-35-114.

The trial court then sentenced Roberson to eight years for each aggravated robbery conviction, the minimum sentence for a Range I, standard offender convicted of a Class B felony. See Tenn. Code Ann. § 40-35-112(a)(2) (2003). Likewise, the court imposed minimum sentences of three years each for the aggravated assaults against Stanley Kline, Sandra Kline, and Darrick Bowden. See Tenn. Code Ann. § 40-35-112(a)(3). Specifically applying enhancement factor (5), see Tenn. Code Ann. § 40-35-114(5) (2003), the court enhanced the sentence for the aggravated assault of Louis Kline because he was a "mental[ly] deficient person" and that for the aggravated assault of Jeffrey Calvin because of his young age. This was the only enhancement factor mentioned by the court during the sentencing of Roberson. However, on a sentencing checklist, included in the record on appeal, the court checked the additional enhancement factors (4) and (11) as being applicable. See Tenn. Code Ann. § 40-35-114(4), (11) (2003). The State's analysis on appeal assumes that the trial court additionally applied enhancement factors (10) and (17), which the court mentioned before sentencing any of the defendants. All seven sentences were ordered to be served consecutively because the defendant was a "dangerous person and . . . a danger to this society and to this area."

Under factor (5), the only enhancement factor specifically discussed by the trial court during the sentencing of Roberson, the court can enhance a defendant's sentence when "a victim of the offense was particularly vulnerable because of age or physical or mental disability." Tenn. Code Ann. § 40-35-114(5) (2003). Although it is undisputed that Jeffrey Calvin was eight years old at the time of the offense and that Louis Kline had Down syndrome, factor (5) was not applicable because the State did not present proof that these victims were in fact "'particularly vulnerable,' i.e.,

---

[1] On June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -210, and -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 6, 8. The amended code sections, however, do not apply in this case because the defendants' offenses were committed prior to the enactment of the statute and they did not elect to be sentenced under the 2005 amendment.

[2] Ingre Calvin testified that her son, Jeffrey, would turn ten years old in August 2005. Accordingly, he was eight years old at the time of the robbery and nine years old at the time of the defendants' July 2005 trial.

incapable of resisting, summoning help, or testifying against the perpetrator." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). We note that Jeffrey Calvin testified during the trial, and there is no proof that he would have reacted differently during the robbery had he been an adult. As for Louis Kline, the State has made no references to the record to show that his condition was such that he could not testify, although he did not do so. Likewise, the State has not shown that Louis Kline would have reacted differently to the shot being fired at the vehicle in which he was a passenger in the backseat had he not had Down syndrome. Accordingly, we agree with the defendant and the State and conclude that the State did not establish a basis for application of enhancement factor (5) as to either of these victims.

As we have set out, the sentencing checklist lists additional enhancement factors (4) and (11) as being applicable and, in remarks made prior to sentencing any of the defendants, the court seemed to suggest that enhancement factors (10) and (17) were applicable to at least some of the defendants or offenses. This court previously has held that sentencing checklists used by the Shelby County Criminal Court, with check marks being placed beside applicable enhancement and mitigating factors and reasons for consecutive sentencing, do not satisfy the mandatory requirements of Tennessee Rule of Criminal Procedure 32(c)(1). See State v. Christopher Campbell, No. W2001-01916-CCA-R3-CD, 2002 WL 826076, at *1 (Tenn. Crim. App. Apr. 22, 2002).

In view of the fact that the trial court erred in applying enhancement factor (5) and because it is unclear which other factors, if any, were applied, we remand for resentencing of Roberson's convictions for the aggravated assaults of Jeffrey Calvin and Louis Kline.

The court sentenced Parker to the minimum sentences for the two aggravated robbery convictions and the aggravated assault in which Darrick Bowden was the victim. The only conviction for which Parker received in excess of the minimum sentence was that for the aggravated assault of Jeffrey Calvin, for which he was sentenced to five years. At the sentencing hearing, the court did not identify any enhancement factors justifying the increased sentence, although factors (4), (5), (10), and (11) were marked on the sentencing checklist as being applicable. The court ordered that all sentences be served consecutively but did not give reasons why this was being done.

On appeal, the State assumes that the trial court utilized these four enhancement factors, as well as factors (10) and (17) which were mentioned in introductory remarks, in setting a five-year sentence for the defendant's aggravated assault of Jeffrey Calvin, agreeing then with the defense that none of the five were applicable. We decline to determine whether any of these factors were applicable since it is unclear what enhancement factors were applied in increasing this sentence. Accordingly, we remand Parker's conviction for the aggravated assault of Jeffrey Calvin for resentencing.

As to Driver, the trial court imposed the minimum sentence for each of his convictions except that for facilitation of the aggravated assault of Jeffrey Calvin, for which the defendant received a sentence of four years, two years in excess of the minimum. No separate explanation was given as to why the sentence was enhanced. However, on a sentencing checklist, enhancement factors (4), (5), (10), and (11) were checked as being applicable.[3] As to factor (5), the additional explanation was handwritten: "young child - mental." The court ordered that all sentences be served consecutively "due to the nature of the crime and the charges being involved here in the several incidents that we had arising out of one set of facts." In view of the fact that it is unclear which

---

[3]On appeal, the State assumes that enhancement factors (10) and (17), mentioned by the court during introductory remarks, were applied and agrees with the defendant that application of those factors was error.

enhancement factors were applied in the sentencing for facilitation of the aggravated assault of Jeffrey Calvin, we remand this conviction for resentencing.

In our review of the defendants' claims that the trial court erred in ordering certain of the sentences to be served consecutively, we note that the State agrees with the defendants' view that the trial court gave insufficient reasons for consecutive sentencing for any of the defendants. For reasons which we will explain, we agree with the analysis of the parties. In sentencing, the court found that Roberson was "a dangerous person and . . . a danger to this society and to this area" and ordered that Driver's sentences be served consecutively because of "the nature of the crime and the charges being involved here in the several incidents that we had arising out of one set of facts." No reason was given for sentencing Parker to consecutive sentences. At the hearing on the defendants' motion for a new trial, the court offered a further explanation for consecutive sentencing, stating that all three defendants "were dangerous people and that they were in their capacity of being dangerous people should be sentenced consecutively [sic]." Tennessee Code Annotated section 40-35-115 allows consecutive sentences to be imposed when the sentencing court finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4).

We agree with the defendants and the State that the trial court did not make sufficient findings to justify imposition of consecutive sentences. Accordingly, we remand to the trial court for a determination as to whether the defendants' sentences should be served concurrently or consecutively.

### III. Whether the Trial Court Erred by Not Timely Disclosing its Prior Relationship with Stanley Kline

Parker argues that his right to a fair trial was abridged because the court, after the trial had begun, disclosed its prior relationship with witness-victim Stanley Kline, saying "this disclosure should have been made prior to trial in order to give counsel for [Parker] the ability to file or even consider a motion for the judge to have rescued [sic] himself."[4] See Tenn. Ct. Crim. App. R. 10(b) (2006); State v. Maddin, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005) (stating that "[w]hen an issue is raised for the first time on appeal, it is typically waived"). We note that, since Mr. Kline is an attorney practicing in Memphis, it is not unexpected that the court was acquainted with him. No reference is made to the record as to where in the lengthy trial this matter was discussed or argued by counsel at the time. Accordingly, this issue is waived.

### CONCLUSION

Based upon the foregoing authorities and reasoning, we remand to the trial court for resentencing of Parker for the aggravated assault of Jeffery Calvin; for resentencing of Driver for facilitation of the aggravated assault of Jeffrey Calvin; for resentencing of Roberson as to the aggravated assaults of Jeffrey Calvin and Louis Kline; and for a determination as to whether the defendants' sentences should be served concurrently or consecutively and, if the latter, appropriate findings of fact.

_____
ALAN E. GLENN, JUDGE

---

[4]We note that, at the hearing on the motion for new trial, the trial court acknowledged knowing Mr. Kline on a professional basis but stated there had been no conversation about the case.