# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 17, 2010 Session

## DEDRICK LAMONT PATTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-62627      Don Ash, Judge**

---

### No. M2009-01472-CCA-R3-PC - Filed April 9, 2010

---

Following a bench trial, the Petitioner, Dedrick Lamont Patton, was convicted of one count of possession with intent to sell twenty-six grams or more of cocaine, a Class B felony. See Tenn. Code Ann. § 39-17-417(i)(5). On January 5, 2009, he filed a petition for post-conviction relief, alleging a number of grounds. A hearing was held on this petition on June 15, 2009. The post-conviction court denied the Petitioner relief in an order dated June 18, 2009. The Petitioner now appeals, contending that the post-conviction court erred in denying him relief because: (1) the post-conviction court, which also served as the Petitioner's trial court, and the post-conviction Assistant District Attorney, who also served as Assistant District Attorney at the Petitioner's trial, failed to recuse themselves; (2) he received the ineffective assistance of counsel at trial; (3) the State failed to disclose exculpatory evidence to the defense; (4) the trial court committed judicial misconduct; (5) the trial court, Assistant District Attorney, and trial counsel colluded against the Petitioner in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution; and (6) the cumulative effect of these errors denied the Petitioner his right to a fair trial. After our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Dedrick Lamont Patton, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William Whitesell, District Attorney General; and Trevor Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

In 2001, the Petitioner pleaded guilty to possession with the intent to deliver less than .5 grams of cocaine and was sentenced to four years in the Department of Correction. See Dedrick Patton v. State, No. M2003-00126-CCA-R3-PC, 2003 WL 22999443, at *1 (Tenn. Crim. App., Nashville, Dec. 23, 2003). The Petitioner then sought post-conviction relief, contending that his guilty plea was not knowingly and voluntarily entered. Id. This Court granted post-conviction relief and remanded his case for a new trial. Id. at *8. After being convicted at that trial, he was sentenced to ten years in the Department of Correction. On direct appeal, this Court summarized the facts underlying the Petitioner's case as follows:

> Kenneth Cooper, a confidential informant, met [the Petitioner], also known as "Cheese," at a gas station in late March or early April of 2000. Mr. Cooper got [the Petitioner]'s phone number, and the two men chatted back and forth on the phone for about a week before Mr. Cooper asked [the Petitioner] if he could get some "white" or cocaine. Mr. Cooper told [the Petitioner] that he knew an individual who wanted to buy two ounces of cocaine. [The Petitioner] told Mr. Cooper that he could get the cocaine. Mr. Cooper made arrangements to purchase the cocaine from [the Petitioner]. Mr. Cooper then informed Lieutenant Al Watson of the narcotics division of the LaVergne Police Department, among other law enforcement personnel, about the potential drug transaction [footnote omitted].

> After Mr. Cooper notified the officers, Mr. Cooper made telephone calls to [the Petitioner] in the officers' presence. The drug transaction was originally scheduled to take place on April 7, 2000. [The Petitioner] was scheduled to sell Mr. Cooper two ounces of cocaine for $1,200 an ounce. On April 7, Mr. Cooper called [the Petitioner] several times. [The Petitioner] informed Mr. Cooper that he was on his way. Mr. Cooper tried to contact [the Petitioner] several more times that day, but [the Petitioner] never showed up for the transaction. The police decided to abort their plans and attempt to try the transaction again at a later time.

> On April 9, 2000, [the Petitioner] informed Mr. Cooper that he could get the cocaine. The next morning, Mr. Cooper called Lieutenant Nick Watson of the LaVergne Police Department to inform him that the deal was going to take place that day. Mr. Cooper met [the Petitioner] on Bell Road where [the Petitioner] showed Mr. Cooper the cocaine. Mr. Cooper noticed that [the

Petitioner] was nervous. [The Petitioner] wanted assurance that the transaction was going to take place and that the buyers were legitimate. After viewing the drugs, [the Petitioner] followed Mr. Cooper to their prearranged meeting location, the Food Lion parking lot.

When they arrived in the parking lot, [the Petitioner] parked behind Mr. Cooper. Officer Edward McKenna of the LaVergne Police Department was waiting in the parking lot in a car so that he could participate in the controlled operation. Officer McKenna was the "buyer." He was responsible for viewing the drugs, interacting with the informant, and giving the "takedown" signal when the exchange took place. Officer McKenna wore a bodywire during the transaction.

Officer McKenna saw [the Petitioner] and Mr. Cooper pull into the parking lot. [The Petitioner] was driving a blue Buick, and Mr. Cooper was driving a small gray car. Mr. Cooper waved Officer McKenna over to a closer parking spot. Mr. Cooper approached Officer McKenna and informed him that [the Petitioner] did not want to deal with anyone. Mr. Cooper told Officer McKenna that he would go get a sample of the cocaine from [the Petitioner] and come back. Mr. Cooper then walked to [the Petitioner]'s car and came back to Officer McKenna's car. According to Officer Nick Watson, [the Petitioner] got out of the car, opened the back door, then got back into the driver's seat. Mr. Cooper handed Officer McKenna a bag containing a powdery white substance. At that time, Officer McKenna gave the takedown signal, and [the Petitioner] was arrested. Officer McKenna gave the cocaine to Officer Nick Watson.

The transaction was also observed by Lieutenant Al Watson, Lieutenant Nick Watson, and others. Lieutenant Nick Watson was parked in a vehicle in the parking lot facing east. From this location, he operated the KEL set, the device that recorded the audio from the bodywire worn by Officer McKenna. Lieutenant Al Watson was parked in the Food Lion parking lot, facing south. Lieutenant Al Watson's testimony was substantially similar to Officer McKenna's testimony.

[The Petitioner] was arrested. Lieutenant Nick Watson retrieved a clear plastic bag containing a rock powder substance that was tannish-white in color from Officer McKenna. The bag was then given to Lieutenant Al Watson, who secured the bag as evidence. Mr. Cooper received $500 as payment for assisting in the drug transaction.

The substance was analyzed by Special Agent Glen Glenn of the Tennessee Bureau of Investigation. According to Special Agent Glenn, the bag retrieved from the drug transaction contained 56.4 grams of cocaine.

At trial, [the Petitioner] waived his right to a jury. [The Petitioner] did not testify or present any proof. At the conclusion of the proof, the trial court found [the Petitioner] guilty of possession of more than twenty-six grams of cocaine with intent to sell or deliver. At a sentencing hearing, the trial court sentenced [the Petitioner] as a Range I, standard offender to ten years in incarceration. On appeal, [the Petitioner] challenges the sufficiency of the evidence and his sentence.

State v. Dedrick L. Patton, No. M2006-02564-CCA-R3-CD, 2008 WL 203584, at *1-2 (Tenn. Crim. App., Nashville, Jan. 24, 2008).

The Petitioner testified at his post-conviction hearing that he received ineffective assistance from trial counsel, an Assistant Public Defender. He contended that trial counsel was ineffective because he failed to: (1) request a Morgan hearing to determine whether or not to admit Mr. Cooper's driving record; (2) request the State's witnesses' criminal records and statements; (3) file and conduct a hearing on a motion in limine for the purpose of establishing that the Petitioner had $450 on his person at the time of his arrest, intending to buy clothing from Mr. Cooper; (4) request a bill of particulars; (5) argue that the Petitioner's indictment was defective because it charged two distinct offenses; (6) investigate "who approached who to initiate the first conversation about drug sales"; (7) object to inappropriate comments made by the State at trial; (8) properly cross-examine State's witnesses in that he failed to ask Mr. Cooper about his previous record, failed to establish that $450 could not buy three ounces of cocaine, as cocaine was selling for $1,200 per ounce at that time, failed to inquire about when the Petitioner was read his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and failed to cross-examine Mr. Cooper about the Petitioner's claim that Mr. Cooper had been the source of the cocaine at issue; (9) argue entrapment as a defense; (10) investigate or challenge the procedures used in the LaVergne Police Department's controlled buy operations, as Mr. Cooper was not searched or given marked money before meeting with the Petitioner; (11) allow the Petitioner to make an allocution statement; and (12) allow the Petitioner to exercise his right to a jury trial, instead insisting that he have a bench trial because trial counsel "had favor" with the trial court[1] and could guarantee a victory.

_____

[1] The Petitioner's trial judge also served as his post-conviction judge; the Assistant District Attorney that prosecuted the Petitioner also represented the State at the post-conviction hearing.

As to the State's failure to disclose exculpatory evidence, the Petitioner claimed that Mr. Cooper had been driving on a suspended license at the time of the controlled buy at issue and that he had not been provided with that information. The Petitioner said he was also not provided with Mr. Cooper's criminal history or the details of the financial benefit he received for his part in the controlled buy. The Petitioner based this contention, and some others, on his belief that Mr. Cooper had produced three ounces of cocaine from his pocket immediately before the Petitioner's arrest, and that there was a one-ounce discrepancy between that amount and the Petitioner's conviction, which was based on his alleged possession of about two ounces of cocaine. In support of this contention, the Petitioner introduced the affidavit of complaint against him, which states that "[the Petitioner] was supposed to bring[] the undercover officer three (3) ounces of cocaine for resale. The three ounces of cocaine were shown to the undercover officer . . . ." The Petitioner believed that a part of the State's undisclosed exculpatory evidence involved a secret deal with Mr. Cooper to compensate him, in part, by giving him the missing ounce of cocaine. The Petitioner testified that the trial court had committed judicial misconduct, in violation of Canons 1 and 2 of Rule 10 of the Rules of the Supreme Court, by failing to correct this discrepancy at trial. The Petitioner also testified that this discrepancy was evidence of "collusion" between trial counsel, the trial court, and the Assistant District Attorney prosecuting him, in that they conspired to convict him despite this evidentiary error. At his post-conviction hearing, the court questioned the Petitioner about this allegation of collusion; the Petitioner opined that the variance between the three grams of cocaine in his affidavit of complaint and the two grams actually proven at trial "[spoke] for itself," and offered no other proof. The post-conviction court affirmed that it had had no inappropriate contact or agreements with either the State or trial counsel.

On cross-examination, the Petitioner admitted that Mr. Cooper's criminal history showed only an arrest, not a conviction, for driving on a suspended license, and that he had been unable to locate any other criminal history despite his belief that Mr. Cooper must have had one. He also admitted that the State had already provided trial counsel with all of its witnesses' statements, so a motion to obtain them was unnecessary.

The Petitioner believed that a bill of particulars "would have shown that it was in fact three ounces of cocaine and not two ounces of cocaine at the scene of the crime." He seemed to accept the State's explanation that his indictment, rather than showing two distinct crimes, simply listed his charges as both possession of a controlled substance with intent to sell and possession of a controlled substance with intent to deliver. He did not believe that trial counsel cross-examined any of the State's witnesses regarding the LaVergne Police Department's failure to search Mr. Cooper before the controlled buy. As to his claim that trial counsel should have developed an entrapment defense, the Petitioner confirmed that he maintained his innocence to trial counsel and that such innocence was inconsistent with an entrapment defense. The Petitioner believed, further, that the trial court commented

negatively on his decision to vacate his original guilty plea, and that the trial court believed him to be guilty because he had pleaded guilty originally.

The Petitioner testified that, on October 20, 2006, he sent trial counsel a letter terminating his services. This letter was sent after his bench trial but before the time limit for filing a motion for a new trial and a notice of appeal had expired.

Trial counsel also testified at the Petitioner's post-conviction hearing. Trial counsel said he was appointed to represent the Petitioner on March 15, 2004. He communicated regularly with the Petitioner, and was aware before trial that Mr. Cooper had been paid for his services. He discussed that fact with the Petitioner. Trial counsel said he obtained discovery materials from the State under its long-standing "open-file" policy, and thus, did not need to file motions in order to obtain witnesses' statements. He noted, however, that the discovery materials did not contain a record of Mr. Cooper's arrest for driving on a suspended license. Trial counsel did not investigate whether Mr. Cooper had a criminal record.

Trial counsel discussed with the Petitioner the procedures used by the LaVergne Police Department in this case, although he did not discuss or investigate their typical controlled buy procedures. He was not aware, as the Petitioner's post-conviction counsel claimed during direct examination, that Det. Al Wilson had previously been sanctioned for failing to follow policy. Trial counsel was able to discuss at trial the fact that Mr. Cooper had been paid and that he had not been searched by police before the controlled buy. Trial counsel believed he adequately cross-examined all witnesses, although he admitted to not cross-examining Det. Nick Watson, the case's lead investigator. He also did not recall the Petitioner ever discussing his belief that Mr. Cooper had brought three ounces of cocaine, rather than two, to the scene of the controlled buy.

Trial counsel said that the Petitioner waived his right to make an allocution statement at sentencing. He also said that he discussed all possible defenses with the Petitioner, who maintained that he was innocent and had merely met with Mr. Cooper in order to buy clothing. He also said that the Petitioner requested a bench trial. Trial counsel told the Petitioner that a bench trial was not in his best interests, but the Petitioner insisted. Trial counsel denied telling the Petitioner that he had favor with the trial judge. He noted that the Petitioner's indictment contained no errors.

Trial counsel said that the Petitioner chose not to testify, and that this decision handicapped trial counsel by forcing him to rely on the possibility of weaknesses in the testimony offered by the State. Trial counsel met with the Petitioner before sentencing; the Petitioner said he had no witnesses to present at sentencing and merely wanted to submit his

case to the trial judge. After sentencing, trial counsel received the Petitioner's letter terminating his services. He responded to the Petitioner with a letter clarifying the Petitioner's time frame for filing a motion for a new trial and a notice of appeal. Trial counsel appeared in court when another attorney, Tim Hogan, was appointed to represent the Petitioner on appeal.

The post-conviction court denied the Petitioner relief after the hearing, explaining this denial in a later-filed order. The Petitioner then terminated his post-conviction counsel and chose to proceed pro se. This appeal followed.

## Analysis

To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

## I. Recusal
### A. The Post-Conviction Court

The Petitioner first contends that the post-conviction judge, by virtue of the fact that he also served as the Petitioner's trial court judge, should have recused himself from the post-conviction hearing because the Petitioner's post-conviction petition charged the judge with judicial misconduct and alleged that he colluded with the State and trial counsel. The Petitioner apparently requested the post-conviction judge's recusal in an oral motion. The post-conviction judge declined to recuse himself.

The post-conviction judge and the Petitioner discussed the Petitioner's charge of collusion at length at his post-conviction hearing. The post-conviction judge, along with trial counsel, affirmed that no collusion or inappropriate contact had occurred. In support of his argument, the Petitioner offers only his belief that the variance between the three ounces of cocaine he says were present at the scene of his arrest and the two ounces used to prosecute him establishes a conspiracy to wrongfully convict him. Without some evidence of such "collusion," we cannot conclude that the post-conviction judge erred in declining to recuse himself; were we to hold otherwise, any post-conviction petitioner could successfully

demand recusal merely by baselessly alleging, as the Petitioner does here, some misconduct on the part of the trial judge. This issue is without merit.

### B. The Post-Conviction Assistant District Attorney

The Petitioner contends on appeal that the Assistant District Attorney's failure to recuse himself from the post-conviction process prevented the Petitioner from calling him as a witness. The Petitioner, however, did not attempt to call the Assistant District Attorney as a witness at his post-conviction hearing; he has therefore waived this claim. See State v. Maddin, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005) (noting that "[w]hen an issue is raised for the first time on appeal, it is typically waived").

## II. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. To demonstrate prejudice, a defendant must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics,

see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

### A. Trial Counsel
The post-conviction court's order, in relevant part, reads:

> [Trial counsel] met with [the Petitioner] on numerous occasions, in court and at the [P]ublic [D]efender's office, to discuss the case with [the Petitioner]. Prior to trial, [trial counsel] filed a motion for discovery and received all discoverable materials within the [S]tate's possession, including: statements of [S]tate's witnesses and documents relied upon by [S]tate's witnesses; evidence pertaining to [the] buy-bust operation. In this [c]ourt's opinion, [trial counsel] conducted sufficient pre-trial investigation to apprise himself of all the facts and circumstances necessary to form a defense strategy. In light of [trial counsel]'s investigation and discovery of facts relevant to [the Petitioner]'s defense, this [c]ourt finds no prejudicial inadequacies in [trial counsel]'s pre-trial representation.

> The trial record shows [trial counsel] used the aforementioned discovery materials throughout the trial to impeach the [S]tate's witnesses and attack the [S]tate's case . . . . Accordingly, this [c]ourt finds no prejudicial inadequacies in [trial counsel]'s representation at trial.

The post-conviction court's order makes it clear that it did not credit the testimony of the Petitioner, while it did credit the testimony of trial counsel. Having reviewed the transcript of the Petitioner's post-conviction hearing, we conclude that the evidence does not preponderate against this finding.

As at his post-conviction hearing, the Petitioner argues on appeal that trial counsel was ineffective for numerous reasons, in that he failed to: (1) file proper pre-trial motions;

(2) investigate the case properly; (3) object to prejudicial comments made by the trial judge; (4) adequately cross-examine State's witnesses; (5) prepare a viable defense; (6) file a motion for new trial or notice of appeal; (7) "challenge weaknesses in the prosecution's case"; (8) object to discrepancies in the State's proof; (9) challenge the procedures underlying the controlled buy at issue; (10) allow the Petitioner to exercise his right to allocution; and (11) "perfect curative instructions relative to sentencing." We will address each of these contentions in turn.

### i. Pre-Trial Motions

The Petitioner contends that trial counsel was deficient for failing to file seven pre-trial motions, specifically, motions requesting: (1) a <u>Morgan</u> hearing; (2) production of Mr. Cooper's arrest history; (3) statements made by State's witnesses; (4) an in limine hearing; (5) Jencks Act material; (6) a bill of particulars; and (7) dismissal of his indictment due to defects.

Given the post-conviction court's evident finding of trial counsel's credibility, some of these contentions simply lack a factual basis. Trial counsel testified that he received the State's witnesses' statements and any Jencks Act material during discovery, and that the Petitioner's indictment contained no defects. Regarding Mr. Cooper's arrest history or a <u>Morgan</u> hearing to determine the admissibility thereof, the Petitioner has failed to demonstrate why this history was relevant, as Mr. Cooper's charge of driving on a suspended license was settled in a March 14, 2000 court appearance, about two weeks before the events underlying this case.[2]

As stated at his post-conviction hearing, the Petitioner wished to file a motion in limine so that the trial court could somehow declare he had $450 on his person at the time of his arrest and intended to use it to buy clothing. We are aware of no authority, and the Petitioner cites none, that would allow such a declaration.

Finally, the Petitioner's contention that trial counsel should have requested a bill of particulars involves his post-conviction petition's central argument, that the variance between the three ounces of cocaine alleged in his affidavit of complaint and the approximately two ounces admitted against him at trial reveals a conspiracy by the police and the State to pay Mr. Cooper with one ounce of cocaine and thereafter falsify the evidence against the Petitioner. Regarding this iteration of the Petitioner's argument, we simply note that we have no evidence before us explaining the variance between the affidavit and evidence at trial; the affidavit's notation of three ounces may simply have been a typographic error, and the post-conviction court clearly did not credit the Petitioner's testimony that he saw Mr. Cooper

---

[2] We do not imply that this charge would be relevant or admissible had it not been settled at this time.

produce three ounces of cocaine immediately before the Petitioner's arrest. We therefore do not know what a bill of particulars would have shown. Regardless, "[a] variance between an indictment or a subsequent bill of particulars and the evidence presented at trial is not fatal unless it is both material and prejudicial." State v. Shropshire, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000) (citing State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984)). Any variance in this case was not prejudicial because the Petitioner was convicted of possessing with intent to deliver twenty-six grams or more of cocaine, one ounce being slightly more than twenty-eight grams. Evidence of possession of either two or three grams of cocaine was therefore sufficient to convict on this charge. Trial counsel's failure to request a bill of particulars did not prejudice the Petitioner in terms of ineffective assistance of counsel. This issue is without merit.

### ii. Investigation

The Petitioner next contends that trial counsel failed to investigate: (1) discovery material; (2) viable impeachment evidence; (3) Mr. Cooper's credibility "including all deals made between the State and the informant"; and (4) proposed jury instructions and applicable sentencing laws. Again, trial counsel received and reviewed discovery material. The Petitioner does not explain what impeachment evidence he believes was available that trial counsel failed to discover. Regarding Mr. Cooper, the Petitioner again seems to imply that trial counsel was deficient for failing to discover that Mr. Cooper was supposedly paid with one ounce of cocaine; the Petitioner offered no evidence of this at his post-conviction hearing, however. Finally, the Petitioner does not explain which jury instructions or sentencing laws trial counsel failed to fully investigate. This argument is therefore waived. See Tenn. Ct. Crim. App. R. 10(b) (stating that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by this [C]ourt").

### iii. Remaining Ineffective Assistance of Counsel Issues

The Petitioner has waived the remainder of his contentions that trial counsel was ineffective by failing to support them with argument or citation to authorities. See id. Although he asserts in his brief that trial counsel "admitted that he failed to make proper objections to presentation of the State's proof at trial" and "admitted that he failed to adequately cross-examine the [S]tate's witnesses," the Petitioner has not demonstrated that there is a reasonable probability that the outcome of his trial would have been different but for these, or any other, alleged errors, as required to show prejudice. See Strickland, 466 U.S. at 694.

-11-

**B. Appellate Counsel**

The Petitioner has also waived any argument that he received the ineffective assistance of appellate counsel by failing to offer any proof at his post-conviction hearing or argument in his brief. See Tenn. Ct. Crim. App. R. 10(b).

## III. Brady,[3] Judicial Misconduct, and Collusion

The Petitioner also contends that the State failed to disclose exculpatory evidence, that the trial court engaged in judicial misconduct, and that the trial court, the State, and trial counsel "colluded" against him by presenting or allowing the presentation of two ounces of cocaine rather than three. The post-conviction court held that these issues were "unsubstantiated by the proof and inappropriate subject matter for post-conviction purposes." We agree. Under Tennessee Code Annotated section 40-30-106:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> > (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
> >
> > (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Waiver is to be determined by an objective standard, under which the petitioner is bound by the action or inaction of his attorney. House v. State, 911 S.W.2d 705, 706 (Tenn. 1995). Because the Petitioner could have presented these claims on direct appeal but chose not to, see Patton, 2008 WL 203584, at *1, they are waived. We also note that our review of the record on appeal reveals that no evidence was introduced at the post-conviction hearing to establish a factual basis for these allegations.

## IV. Cumulative Effect of Error

Finally, the Petitioner contends that the cumulative effect of the errors alleged above entitles him to a new trial. Having found no error, however, we conclude that the Petitioner is not entitled to relief.

---

[3] See Brady v. Maryland, 373 U.S. 83 (1963).

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the post-conviction court's denial of relief.

_____

DAVID H. WELLES, JUDGE