IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2005Session

STATE OF TENNESSEE v. HOMER ALSON MADDIN, III

Direct Appeal from the Criminal Court for Davidson County
No. 2003-A-393   Steve R. Dozier, Judge

No. M2004-02298-CCA-R3-CD - Filed November 1, 2005

The appellant, Homer Alson Maddin, III, was convicted by a jury of four counts of aggravated rape in violation of Tennessee Code Annotated section 39-13-502. As a result, the appellant was sentenced to an effective sentence of twenty-five years at one hundred percent. The appellant appeals, arguing that the trial court erred in instructing the jury on the mental state of reckless, and that the trial court erred in applying certain enhancement factors to determine his sentence. For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which, DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

B. F. "Jack" Lowery and G. Jeff Cherry, Lebanon, Tennessee, for the appellant, Homer Alson Maddin, III.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Though the appellant does not challenge the sufficiency of the evidence on appeal, we feel it necessary to recount the facts as they have a bearing on the other issues raised on appeal. On February 28, 2003, the Davidson County Grand Jury indicted the appellant on four counts of aggravated rape. At the jury trial, the victim and the appellant presented two conflicting versions of the events that led up to the appellant's indictment for aggravated rape.

The victim testified that she was nineteen years old at the time that the crime took place. She admitted that she had known the appellant since the eighth grade and that the two dated briefly at that time. Two days prior to the crime, the appellant telephoned the victim to give her his new telephone number.

According to the victim, on July 12, 2002, she and her boyfriend, Mike Forbes, ran errands and then returned to his apartment to hang out with some friends. At some point, the victim took several Xanax. Eventually, the victim was hanging out with Brittany Bayless, drinking wine coolers and "trying to have a good time." Ms. Bayless was upset about her recent break-up with her boyfriend. The victim decided that she would call the appellant in an attempt to get some more pills for her friend to help her calm down. The appellant agreed that he would get the pills and instructed the victim and Ms. Bayless to meet him at a local cinema. When they met, the appellant told the women to follow him in their car to his father's house where he would make some telephone calls in an effort to find some pills.

At the appellant's father's house, there were numerous people and a "lotta heavy drinking going on" at what appeared to be a "big party." The appellant and his father's girlfriend made several phone calls, trying to locate pills. Having no success, the victim, the appellant, and Ms. Bayless left the party and went to the home of the appellant's friend. The appellant asked the victim to give him a ride to go buy some marijuana. The victim did not want marijuana, so she took the appellant back to his father's residence. At some point, the appellant asked the victim to take him to his mother's house. The victim agreed. When they arrived, the appellant asked the victim to come inside for a minute. Ms. Bayless remained in the car.

According to the victim, once they entered the apartment, the appellant had a brief argument with his mother, then ushered the victim into a bedroom and left her alone. When the appellant returned to the bedroom, he "closed the door and got extremely close," trying to kiss her and asking her to have sex with him. The victim testified that she refused and reminded the appellant that she had a boyfriend. The victim claimed that she tried to leave, and the appellant threw her on the bed, put a knife to her throat and told her "not [to] make any noises" because she did not "wanna get hurt."

The victim explained that the appellant then removed her shorts, "used his tongue" on her "private area" then forced her to "have sex with him." The victim testified that she was "silently crying the whole time" and begged him to leave. When the appellant was finished, the victim put back on her shorts and got ready to leave. The appellant then forced the victim to perform oral sex on him. After complying for a few seconds, the appellant then penetrated the victim's vagina with his fingers and forced her to "have sex with him again." The victim testified that the appellant ejaculated on both occasions and that the appellant had a knife in his hand the entire time.

The appellant's version of the facts differed significantly from that offered by the victim. The appellant maintained that the victim telephoned him looking for pills. The appellant proposed that they meet at a local cinema so that the victim could follow him to his father's house. The victim and

Ms. Bayless met the appellant and followed him to his father's house. Once at the house, the appellant made several phone calls, trying to locate some pills for the victim. According to the appellant, the victim offered him sex in exchange for pills. The three then left the party to go to the home of the appellant's uncle to try to find drugs. Having no success, the three went to another location, again attempting to find pills or marijuana.

The appellant testified that during the time the three (3) were searching for drugs, the victim was "hugging" on the appellant and repeatedly offered to have sex with him if he could get her some pills. After visiting several locations trying to find pills, the three (3) returned to the appellant's father's house to make more phone calls. The appellant claims that, at that time, the victim asked his father for pills and also offered him sex in exchange for drugs. In response to the actions of the victim, the appellant testified that his niece, Julie Maddin, got into an argument with the victim and pushed her down, causing the victim to bleed from the neck and elbow.

After the altercation, the appellant stated that he asked the victim to take him back to his mother's apartment. When they arrived, the appellant claimed that the victim came into the house with him and again offered to sleep with him if he could get her some pills. According to the appellant, the victim began "rubbing" on his leg and then "worked her way down" and "started rubbing" on his penis. The appellant claimed that the victim unbuckled his pants, rubbed his penis and took off her clothes. The appellant claimed that the victim was not only a willing participant, but also the aggressor during the encounter. The appellant admitted that he and the victim had sex and that he ejaculated on the bed, then the victim asked him to roll over so that she could "get on top." At that point, the appellant stated that he and the victim had sex for a second time and he ejaculated again on the bed. The appellant claimed that the victim wanted to have sex for a third time, but the appellant told her she could give him a "blow job." According to the appellant, the victim willingly complied.

The appellant denied that there were any knives in the room. He stated that when he and the victim left the apartment, they were holding hands.

At the conclusion of the jury trial, the jury convicted the appellant of all four counts of aggravated rape. As a result, the trial court sentenced the appellant to four concurrent sentences of twenty-five (25) years, to be served at one-hundred percent. The appellant filed a motion for new trial, an amended motion for new trial, and a second amended motion for new trial. After a hearing, the trial court denied the motions. The appellant filed a timely notice of appeal with this Court. On appeal, the appellant argues that the trial court erred in instructing the jury that they could find the appellant guilty of aggravated rape if his actions were done "recklessly," and that the trial court erred in applying certain enhancement factors in violation of Blakely v. Washington, 542 U.S. 296 (2004).

Analysis

Jury Instructions

The appellant first argues that the trial court erred in charging the jury "on the culpable mental state of 'reckless,' thereby lessening the State's burden of proof." Although the appellant acknowledges that trial counsel failed to object to the jury instructions at trial and failed to raise the issue regarding the jury instructions in a motion for new trial, he argues that we should address the issue by utilizing the plain error standard. The State argues that "plain error is lacking and the trial court's error is harmless."

Ordinarily, the appellant's issue would be considered waived because he failed to make a contemporaneous objection during trial and failed to raise the issue in a motion for new trial. See Tenn. R. App. P. 36(a); Tenn. R. App. P. 3 (e). When an issue is raised for the first time on appeal, it is typically waived. State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). However, we may address the issue in the event there was plain error on the part of the trial court. State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). If this Court is to review the claims of improper jury instructions we must do so through the process of "plain error" review embodied in Tennessee Rule of Criminal Procedure 52(b) which provides:

> An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.[1]

In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. See Smith, 24 S.W.3d at 282-83; State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b). For a "substantial right" of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings. United States v. Olano, 507 U.S. 725, 732-37 (1993) (analyzing the substantially similar Federal Rule of Criminal Procedure 52(b)); Adkisson, 899 S.W.2d at 642. This is the same type of inquiry as the harmless error analysis under Tennessee Rule of Appellate Procedure 36(b), but the appellant bears the burden of persuasion with respect to plain error claims. Olano, 507 U.S. at 732-37.

---

[1]This rule by its terms allows plain error review only where there is a failure to allege error in the new trial motion or where the error is not raised before the appellate court. Additionally, the rule has been interpreted by the appellate courts to allow appellate review under some circumstances in the absence of a contemporaneous objection.

In the case herein, we are not persuaded that the appellant has successfully carried his burden of persuasion in establishing a plain error claim. Looking first to factor three, we are not convinced that a substantial right of the appellant was affected such that the error by the trial court prejudiced the appellant by affecting the outcome of the trial. There are no facts presented at trial under which the jury could have possibly concluded that the penetration of the victim by the appellant was reckless. There were two scenarios presented at trial with regard to the events that led up to the appellant's indictment. The victim maintained that the appellant intentionally penetrated her on four separate occasions, forcing or coercing her at knife-point. There was no suggestion by the victim that the appellant's actions were anything other than intentional. The appellant's theory of defense, on the other hand, was that of consent. The appellant maintained that the victim offered him sexual favors in exchange for the acquisition of pills and/or marijuana. According to the appellant, he attempted to secure the drugs for the victim and presented testimony of several people that suggested the victim was openly affectionate toward him on the night that the rape occurred. He testified and admitted that the penetration occurred, never portraying himself as a reluctant participant in the sexual interlude between himself and the victim. The two scenarios presented through the evidence at trial suggest that the appellant could have had only an intentional or knowing mens rea. We feel compelled to note that another panel of this Court reversed and remanded an aggravated rape conviction in State v. Weltha Womack, No. E2003-02332-CCA-R3-CD, 2005 WL 17428 (Tenn. Crim. App., at Knoxville, Jan. 4, 2005), where the court determined that the trial court erred in instructing the jury with the mental state of reckless with respect to the element of sexual penetration. In Womack, while the defendant did not deny that he touched the victim's genital area, he denied that the touching was for any sexual purpose. Because of the possibility that the jury could have determined, under the facts presented in Womack, that the defendant's actions were reckless, this Court was unable to conclude that the jury instruction error was harmless beyond a reasonable doubt. As a result, this Court reversed and remanded for a new trial. Further, in Womack, this Court was not reviewing the matter via plain error analysis. In the case herein, the appellant was not prejudiced by the jury instructions because there were no facts presented at trial under which the jury could have concluded that the appellant's acts of sexual penetration, consensual or not, were reckless. Thus, a substantial right of the accused was not affected as required for plain error analysis in Smith. Consequently, we are unable to review the matter under plain error and this issue is waived.

Sentencing

Next, the appellant contends that the trial court improperly applied two enhancement factors contrary to the decision in Blakely v. Washington, ___ U.S. ___, 124 S. Ct. 2531 (2004). The appellant does not argue that the proof did not support the application of the enhancement factors, merely that Blakely prevents the application of enhancement factors that are neither submitted to a jury nor admitted by the defendant and that the trial court placed too much weight on the enhancement factors it found. The State argues that Blakely does not apply, and, in the alternative, that the trial court properly applied the enhancement factors.

The Tennessee Supreme Court recently determined that <u>Blakely</u> did not announce a new rule of law and that "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violated the Sixth Amendment right to jury trial." <u>State v. Gomez</u>, 163 S.W.3d 632, 651 (Tenn. 2005). In <u>Gomez</u>, the court determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury nor admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S.Ct. 2531 (2004), <u>United States v. Booker</u>, ___ U.S. ___, 125 S.Ct. 738 (2005), or <u>United States v. FanFan</u>, the case consolidated with <u>Booker</u>, because "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." <u>Gomez</u>, 163 S.W.3d at 661. As a result of the decision in <u>Gomez</u>, the appellant's issue is without merit.

<u>Conclusion</u>

For the foregoing reasons, the judgment of the trial court is affirmed.

---

        JERRY L. SMITH, JUDGE