IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2021

**STATE OF TENNESSEE v. JOHN GROSS**

**Appeal from the Criminal Court for Davidson County**
**No. 2018-B-999    Jennifer Smith, Judge**

_____

**No. M2020-01143-CCA-R3-CD**

_____

The Defendant, John Gross, was convicted after a bench trial in the Davidson County Criminal Court of violation of an order of protection, a Class A misdemeanor, and aggravated stalking, a Class E felony. *See* T.C.A. §§ 39-13-113 (2018) (subsequently amended) (violation of an order of protection), 39-17-315 (Supp. 2017) (subsequently amended) (aggravated stalking). The trial court sentenced the Defendant to an effective sentence of two years, eleven months, twenty-nine days' incarceration. On appeal, the Defendant contends that the evidence is insufficient to support his convictions and that plain error exists because the trial court admitted as evidence the recordings of the Defendant's phone calls to the victim. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, John Kelly Gross.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson and Benjamin A. Ball, Assistant Attorneys General; Glenn R. Funk, District Attorney General; and Samantha Dotson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

The Defendant's convictions relate to the violation of an order of protection and the aggravated stalking of the victim, who is the Defendant's ex-wife.

At the trial, the victim testified that she obtained a temporary order of protection against the Defendant on November 11, 2016. The temporary order became a year-long permanent order of protection on November 21, 2016, and it specifically ordered that the Defendant "not contact [the victim] . . . by phone." The orders were admitted as exhibits. They reflect that the temporary order of protection was personally served on the Defendant and that the permanent order of protection was mailed to the Defendant at the Davidson County jail, where he was incarcerated.

The victim testified that she had previously obtained orders of protection against the Defendant for roughly a decade, that she and the Defendant divorced in 2009, and that she had previously pressed charges against the Defendant for burglary. She said that the Defendant was convicted of burglary and went to jail.

The victim testified that on the night of September 1 and on the morning of September 2, 2017, she received four phone calls from the Defendant. The victim said that she answered the calls and recorded them. The recordings were received as an exhibit and played for the trial court. The victim identified the voices on the recordings as belonging to her and the Defendant. In the calls, the Defendant threatened to "break . . . one bone" in the victim's body, threatened to burn down her neighbor's house, yelled at her, and called her a "b----," a "w----," a "f------ b----," and a "lying b----." The victim confirmed that in the third call she asked the Defendant to stop calling her and that the Defendant continued to call her after the request.

The victim testified that she did not initiate the calls and that she only answered the calls in an attempt to hear background noise as she was worried that the Defendant was in his car and was coming to her house. The victim said the Defendant previously came to her house. She testified that she received the calls at approximately 10:49 p.m., 10:52 p.m., and 10:54 p.m. on September 1; and 12:29 a.m. on September 2, 2017. The victim stated that the Defendant's calls made her feel nervous and that in the calls the Defendant threatened to break one of her bones and burn down her neighbor's house. The victim said she called the police after receiving the calls.

On cross-examination, the victim testified that she was aware that the Defendant had been diagnosed with schizophrenia and that he had been prescribed medication. She said that she did not know whether the Defendant had been taking his medication at the time of the calls. She stated that the Defendant had hit her, kicked her, and "roughed [her] up" in the past.

The Defendant testified that the calls were made out of concern for his son. The Defendant said that he thought his son had been molested by the victim's neighbor but that he was now convinced that the molestation did not happen. The Defendant clarified that

he did not threaten to burn down the victim's house. The Defendant stated he did not stalk the victim but instead "inappropriately tried to get to [his] son."

On cross-examination, the Defendant testified that he did not remember making four calls to the victim, but acknowledged that his voice was on the recording of the calls. The Defendant stated that he was familiar with how an order of protection worked.

On this evidence, the trial court found the Defendant guilty of violation of an order of protection and of aggravated stalking. At the sentencing hearing, the trial court imposed a sentence of eleven months, twenty-nine days' incarceration for the violation of an order of protection and a sentence of two years' incarceration for aggravated stalking. The trial court ordered that these sentences be served consecutively to each other and consecutively to a prior conviction. This appeal followed.

# I

## Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions. The State contends that the evidence is sufficient to support the Defendant's convictions. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

## A. Violation of an Order of Protection

Tennessee Code Annotated section 39-13-113(a)(1) states that it is an offense "to knowingly violate" an order of protection. The Defendant argues that while the victim testified that the calls were made on September 1 and 2, 2017, there "was no proof presented of the actual date and times of the calls." Because the Defendant testified that he could not remember placing the calls, the calls could "have been placed before the order of protection was in place, or after it had expired."

Viewed in the light most favorable to the State, the record reflects that the victim received four unsolicited and unwanted phone calls from the Defendant on September 1 and 2, 2017. The victim recorded these calls, and the recordings were played for the trial court. The Defendant admitted that his voice was on the recording. The victim testified as to the times of the calls and that they occurred while the order of protection was in effect. From this evidence, a rational trier of fact could find that the Defendant knowingly made telephone calls to the victim in violation of an order of protection. As we have stated, it is not the function of this court to reassess the credibility of the witnesses and reweigh the evidence. *Bland*, 958 S.W.2d at 659; *see Sheffield*, 676 S.W.2d at 547. The Defendant is not entitled to relief on this basis.

## B. Aggravated Stalking

As relevant here,

> "'Stalking' means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested[.]" "'Harassment' means conduct directed toward a victim that includes . . . repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer emotional distress."

T.C.A. § 39-17-315(a)(1), (3), (4) (2018) (subsequently amended). The Defendant argues that the State did not prove that the victim felt "'terrorized, frightened, intimidated, threatened, harassed, or molested.'"

> A person commits aggravated stalking who commits the offense of stalking . . . , and . . . [a]t the time of the offense, was prohibited from making contact

- 4 -

with the victim under . . . an order of . . . protection, and the person knowingly violates . . . the order . . . .

*Id.* § 39-17-315(c)(1)(E).

Viewed in the light most favorable to the State, the evidence shows that the Defendant called the victim repeatedly on September 1 and 2, 2017. In the calls, the Defendant yelled at the victim, threatened to break one of her bones, threatened to burn down her neighbor's house, and called the victim a "b----," a "f------ b----," a "lying b----," and a "w----." The victim testified that the Defendant's calls made her "nervous" and that she only answered the calls because she was "worried" the Defendant was coming to her house, as she said he had done previously. The Defendant had also previously kicked and hit the victim. The victim testified that she had previously obtained orders of protection, and the Defendant acknowledged that he was familiar with orders of protection and that he understood that the order of protection restricted his ability to contact the victim. During the third call, the victim asked the Defendant to stop calling her, but he continued to call and threaten her. From this evidence, a rational trier of fact could conclude that the Defendant's behavior was "repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually cause[d] the victim to suffer emotional distress." *See id.* § 39-17-315(a)(3).

Further, we conclude that the evidence is sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the Defendant was guilty of aggravated stalking by calling the victim four times in violation of an order of protection and in a manner that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. The Defendant is not entitled to relief on this basis.

## II

### Admission of Recordings

On appeal, the Defendant argues that the trial court erred when it allowed the admission of the recordings made by the victim of the phone calls without sufficient corroborating evidence from which the trial court could reasonably ascertain the veracity of the claim that the calls were made while the order of protection was in effect. The State argues that the issue was waived because it was first raised on appeal. The record reflects that the Defendant did not object to the admission of the recordings at the trial, did not otherwise raise this issue at the trial, did not raise this issue in his motion for a new trial, and did not raise this issue at the court's hearing regarding the motion for a new trial. The

Defendant acknowledges in his brief, "Defense counsel did not request corroboration of the date and times of the telephone calls nor object to their admission as evidence," and he requests relief as a matter of plain error.

Raising an issue for the first time on appeal typically waives review of the issue. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief to be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Maddin,* 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005) ("When an issue is raised for the first time on appeal, it is typically waived."). However, this court "may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial[.]" *See* Tenn. R. App. P. 36(b), *see State v. Smith,* 24 S.W.3d 274, 282 (Tenn. 2000).

Five factors are relevant

when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)); *see also State v. Minor*, 546 S.W.3d 59, 70 (Tenn. 2018). All five factors must exist in order for plain error to be recognized. *Smith*, 24 S.W.3d at 283. "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the trial." *Id.*; *Adkisson*, 899 S.W.2d at 642.

In his brief, the Defendant asserts that a rule of law was breached when the recordings were admitted, but he does not cite to any authority to support his argument that error occurred. We decline to speculate in this regard. Because the Defendant has not shown that a clear and unequivocal rule of law was breached, plain error relief is not appropriate. *See Smith*, 24 S.W.3d at 283.

- 6 -

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE