IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 7, 2022 Session

## STATE OF TENNESSEE v. CHARLES LAFAYETTE STINSON

**Appeal from the Circuit Court for Madison County**
No. 20-35    Donald H. Allen, Judge

### No. W2021-01103-CCA-R3-CD

The Defendant, Charles Lafayette Stinson, was convicted of two counts of possession with intent to sell 0.5 gram or more of methamphetamine, a Class B felony; two counts of simple possession of a Schedule IV drug, a Class A misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor. *See* T.C.A. § 39-17-418 (2018) (simple possession); -425 (2018) (possession of drug paraphernalia); -434 (2018) (possession with intent to sell). He received an effective eighteen-year sentence. On appeal, the Defendant contends that the trial court erred by (1) allowing the State to introduce testimony regarding the Defendant's prior criminal charges, (2) allowing the State's rebuttal witness to testify regarding evidence beyond the scope of evidence presented in the State's case-in-chief, and (3) failing to consider the required statistical information when sentencing the Defendant. We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined. JOHN EVERETT WILLIAMS, P.J., not participating.[1]

Mitchell Aaron Raines, Assistant Public Defender (on appeal); and Joshua Lee Phillips, Jackson, Tennessee (at trial), for the appellant, Charles Lafayette Stinson.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Andrew Craig Coulam, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Presiding Judge John Everett Williams died September 2, 2022, and did not participate in this opinion. We acknowledge his faithful service to this court.

# OPINION

At the May 13, 2021 trial, Madison County Sheriff's Deputy Nathaniel Shoate testified that he worked with the Metro Narcotics Unit in Jackson, where he specialized in drug investigations. He said that on August 20, 2019, he responded to a call at the Days Inn. Deputy Shoate explained that the hotel manager requested law enforcement help in evicting the Defendant from his hotel room due to suspected drug activity. Deputy Shoate said that he and several officers went to the hotel and spoke with the manager, who led them to a room. Deputy Shoate said that the manager knocked on the room door and a woman, Tracy Wooley, opened the door. Deputy Shoate said that he observed in the room a small plastic container with what he suspected to be marijuana and digital scales. Deputy Shoate said that the Defendant was inside and ran toward the bathroom. Deputy Shoate said that he entered the room and followed the Defendant into the bathroom because he did not know if the Defendant had a weapon. Deputy Shoate explained that the Defendant was arrested after a short struggle. Deputy Shoate said that during the struggle, the Defendant threw a methamphetamine pipe into the bathtub and threw a cigar wrapper into the toilet and tried to flush it. Deputy Shoate said that the pipe broke into small pieces when it hit the bathtub. Based on his experience, Deputy Shoate explained that it was a methamphetamine pipe with residue inside, which indicated the pipe had been used multiple times to smoke methamphetamine.

Deputy Shoate testified that after he obtained a search warrant, he searched the Defendant's room and located three digital scales inside a bag. Deputy Shoate said that the scales he saw initially were on a dresser next to a bowl of marijuana. He said he found a small piece of foil, which contained a substance he suspected was methamphetamine. Deputy Shoate said that the Defendant wore a necklace, which had a metal tube containing thirty-three one-milligram alprazolam tablets. He said that he found $1075 on the Defendant. Deputy Shoate said that based on his training and experience, he concluded that the Defendant intended to sell or deliver drugs. He said the Defendant was unemployed and had a large amount of cash. He explained that drug dealers also used scales to weigh substances before a drug transaction and that the Defendant possessed scales. Deputy Shoate said that the amount of methamphetamine found in the Defendant's room was larger than what would be for personal use and that the amount was consistent with someone selling methamphetamine. Deputy Shoate said that the amount of alprazolam was consistent with someone selling the drug rather than possessing it for personal use. He explained that the Defendant did not have a prescription for alprazolam and that the tablets were not in a prescription bottle. Deputy Shoate said that these factors indicated that the Defendant intended to sell the drugs.

Tennessee Bureau of Investigation Special Agent Rachel Strandquist testified that she analyzed the substances collected in the Defendant's hotel room and identified them as 0.98 gram of methamphetamine and thirty-five alprazolam tablets, a Schedule IV controlled substance.

The Defendant testified that he had been a drug addict for most of his life. He said that he began using marijuana at age nine and that he had been incarcerated multiple times for possession crimes related to his drug addiction but that he had never been convicted of intent to sell drugs. The Defendant said that crack cocaine, heroin, methamphetamine, pills, and marijuana were his drugs of choice. The Defendant said that he never sold drugs because he used any drugs that he had in his possession. The Defendant confirmed that he had $1000 in his pocket at the time of his arrest. He said that he had stolen the money to support his drug addiction and explained a scheme he used to obtain the cash by stealing items from businesses and then returning them for cash.

The Defendant testified that he had purchased the bottle of alprazolam tablets from a dealer for $25. He said that he had multiple sets of scales and that only one set worked. He said he used the working set of scales for his own use to make sure he received the correct amount of drugs. The Defendant explained that before he began using scales, the person from whom he purchased drugs gave the Defendant $30 worth of drugs when the Defendant paid $50. The Defendant said that he also used the scales to avoid overdosing.

The Defendant testified that he had been incarcerated for two years, that he was sober, and that he still needed help regarding his drug addiction. He said that he did not own a car and that all of his possessions were in the hotel room where he was arrested. He said that he was homeless and moved from hotel room to hotel room. He said that he also obtained money by standing at gas stations and asking people for money. The Defendant stated that he had multiple criminal convictions including drug possession, evading arrest, theft, and driving on a suspended license. He said that most of his convictions were misdemeanors and that he had never been charged with possession with the intent to sell or deliver drugs.

The Defendant testified that he was not the only person staying in the hotel room. He said that Tracy Wooley stayed with him and that the officers did not establish that the drugs found in the room belonged to the Defendant and not Ms. Wooley.

Before cross-examining the Defendant, the prosecutor asked for a bench conference. During the conference, the prosecutor told the trial court he intended to ask the Defendant about his being arrested and charged with possession with the intent to sell heroin because the Defendant testified that he had never been charged with possession with intent to sell drugs. Defense counsel argued that the Defendant was not convicted of possession with intent to sell heroin and that the Defendant's testimony was likely referring to his not

having been convicted. The court ruled that the Defendant had opened the door and put his character for truthfulness at issue by testifying that he had never been arrested or charged with the intent to sell drugs and by testifying that he had never sold drugs. The court ruled that the State could impeach the Defendant and question him about his testimony that he had never been arrested or charged with the intent to sell drugs and his testimony that he had never sold drugs.

On cross-examination, the Defendant testified that on July 6, 2019, he was charged with possession with intent to sell or deliver heroin. The Defendant explained that he was not convicted. When asked if it was a lie when the Defendant testified that he had never been charged with possession with intent to sell or deliver drugs, the Defendant replied, "okay." The Defendant stated that he had never sold methamphetamine or heroin.

Following cross-examination, the trial court held a hearing outside the jury's presence to determine if Tracy Wooley would be allowed to testify regarding her witnessing prior drug sales made by the Defendant. The State argued that the Defendant had opened the door to Ms. Wooley's testimony by his testifying that he had never sold methamphetamine or heroin. Defense counsel argued that the prejudicial effect of her testimony would outweigh the probative value. The court ruled that the Defendant had opened the door by his testimony that he had never sold drugs and that the State had a right to impeach that testimony. The court ruled that the Defendant had also opened the door by testifying that he had never been arrested or charged with possession with intent to sell or deliver drugs.

Outside of the jury's presence, the State made an offer of proof. Ms. Wooley testified that she purchased drugs from the Defendant in 2019 and that she had known him for approximately twenty years. Ms. Wooley said that she had a sexual relationship with the Defendant and that she occasionally exchanged sex with the Defendant for drugs. She said that in 2019, she purchased heroin daily from the Defendant. Ms. Wooley said that she paid the Defendant twenty dollars for one-tenth of a gram of heroin. She said that she also observed the Defendant sell methamphetamine to others daily but that she never purchased methamphetamine from him. Ms. Wooley said that the Defendant charged $100 per gram of methamphetamine. Following her testimony, the trial court ruled that Ms. Wooley could testify because the Defendant had placed his character for truthfulness in issue with his testimony. The court found that the Defendant's intent was a material issue in this case because the Defendant testified that he had never sold drugs and that it was not his intent in this case to sell the drugs in his possession. The court found that evidence of his character could be elicited from Ms. Wooley and that the probative value of her testimony outweighed any unfair prejudice. The court ruled that the State could question Ms. Wooley about any of the Defendant's prior drug sales or bad acts concerning drug sales.

The jury returned, and the State called Ms. Wooley as a rebuttal witness. Ms. Wooley testified that she had known the Defendant for approximately twenty years, that she had a sexual relationship with the Defendant, and that in 2019, she began purchasing heroin daily from the Defendant. She explained that she paid for the heroin with cash or exchanged sex with the Defendant for heroin. Ms. Wooley said that she typically bought one gram of heroin at a time for twenty dollars. Ms. Wooley testified that she purchased drugs from the Defendant in the hotel room in which he was staying and that she observed his selling methamphetamine daily to other individuals. She said the Defendant charged $100 per gram for methamphetamine. Ms. Wooley said that she was in the hotel room with the Defendant on the day of his arrest and that she traded sex with him for heroin. Ms. Wooley said that the Defendant sold drugs to support his addiction.

At the conclusion of the trial, the jury convicted the Defendant of two counts of possession with intent to sell 0.5 gram or more of methamphetamine, two counts of simple possession of a Schedule IV drug, and one count of possession of drug paraphernalia. This appeal followed.

## I.      Tennessee Rule of Evidence 404(b)

The Defendant contends that the trial court erred by allowing the State to cross-examine the Defendant regarding his prior criminal charge for possession of heroin with intent to sell or deliver without conducting the required Tennessee Rule of Evidence 404(b) hearing. The Defendant argues that although the trial court conducted a 404(b) hearing, the hearing was limited in scope as to whether Ms. Wooley would be allowed to testify about the Defendant's alleged drug sales she witnessed from late 2018 to early 2019. The Defendant argues that the charge for possession with intent to sell or deliver heroin was not related to the alleged drug sales Ms. Wooley witnessed from 2018 to 2019. The Defendant argues the trial court did not conduct the mandatory 404(b) hearing regarding the charge for possession with intent to sell or deliver heroin and requests this court to remand the case for a new trial. The State responds that the Defendant waived his 404(b) claim by failing to make a contemporaneous objection at trial and by not including the issue in his motion for new trial. The State argues that during the bench conference before the State's cross-examination of the Defendant, defense counsel never objected to the State's impeaching the Defendant on a 404(b) basis with the Defendant's charge for possession with intent to sell or deliver heroin. The State says that defense counsel argued that the Defendant might have been confused about the difference between convictions and charges but never requested a 404(b) hearing. The Defendant responds that if the issue is deemed waived, he is entitled to plain error review.

Raising an issue for the first time on appeal typically waives review of the issue. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief to be granted to a party responsible for an error or who failed to take whatever action

was reasonably available to prevent or nullify the harmful effect of an error."); *see also State v. Howard*, 504 S.W.3d 260, 277 (Tenn. 2016) ("[A] defendant may not advocate a different or novel position on appeal."); *see also State v. Maddin,* 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005) ("When an issue is raised for the first time on appeal, it is typically waived.").

Regarding waiver, defense counsel did not object to the State's cross-examining the Defendant regarding his prior charge for possession with intent to sell or deliver heroin on a Rule 404(b) basis. Rather, defense counsel argued that the Defendant was not convicted of possession of heroin with intent to sell and that the Defendant's testimony was likely referring to his not being convicted. The Defendant did not raise the issue regarding the Defendant's prior charge for possession of heroin with intent to sell or deliver in his motion for new trial, nor was it argued at the Defendant's motion for new trial hearing. Therefore, the Defendant has waived appellate review of this issue on appeal. *See* Tenn. R. App. P. 36(a); *see also Howard*, 504 S.W.3d at 277; *Maddin,* 192 S.W.3d at 561.

In any event, this claim is not a 404(b) issue and, if raised properly, would be governed by Tennessee Rules of Evidence 608 ("evidence of character and conduct of witness") and 403 ("danger of unfair prejudice"). The evidence reflects that the Defendant placed his credibility at issue when he testified that he had never been charged with selling or delivering drugs nor had he ever sold or delivered drugs.

In addition, we have considered the Defendant's argument for plain error relief and conclude that no plain error exists. The Defendant is not entitled to relief on this basis.

## II. Rebuttal Witness

The Defendant contends that the trial court erred by allowing the State's rebuttal witness, Ms. Wooley, to testify about the Defendant's selling and exchanging drugs with her, matters which were not presented during the State's case-in-chief. The Defendant argues that Ms. Wooley's testimony exceeded what was necessary to impeach the Defendant and that she was, instead, a fact witness for the State. The Defendant argues that he was unable to make a fully informed decision about his testifying because Ms. Wooley did not testify during the State's case-in-chief. He asserts that allowing Ms. Wooley to testify as a rebuttal witness violated *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999). The State responds that the Defendant has waived this challenge by failing to make a contemporaneous objection regarding the scope of Ms. Wooley's testimony and by failing to include the issue in his motion for new trial. The Defendant responds that if the issue is deemed waived, this court should conduct plain error review.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Questions regarding the admissibility and relevance of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

At trial, defense counsel objected to Ms. Wooley's testifying about the Defendant's prior acts of selling drugs, and we conclude that this issue is not waived. The trial court ruled that the Defendant's testimony that he had never sold drugs opened the door to the State's calling Ms. Wooley to contradict that testimony. The court also ruled that the probative value of Ms. Wooley's testimony was not substantially outweighed by the danger of unfair prejudice.

The Defendant's credibility was a material issue, and Ms. Wooley's testimony was relevant because it directly contradicted the Defendant's claims that he had never sold drugs. *See* Tenn. R. Evid. 401, 402. Moreover, the record supports the trial court's finding that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See id.* 403. The Defendant is not entitled to relief on this basis.

### III.   Sentencing

The Defendant contends that the trial court erred by sentencing the Defendant without considering the mandatory statistical information related to the purposes and principles of sentencing. The Defendant argues that the court said it would consider relevant statistical information but that there is no indication in the record how or what statistical information the court considered. The Defendant argues that this was a fundamental error and requests a new sentencing hearing with instructions for the court to consider the statistical information and explain how the information relates to the Defendant's sentence. The State responds that the court did not err by sentencing the Defendant because it considered the relevant statistics and thoroughly explained its reasoning on the record for the sentence imposed.

At the sentencing hearing, Ron Kwasigroh testified that he worked for West Tennessee Healthcare and that he met the Defendant through a program called Life's Healing Choices. Mr. Kwasigroh said that he helped with the program, which was designed to help inmates make better life decisions. He said that the Defendant completed the program. Mr. Kwasigroh said that the Defendant "did a great job" in the program and that the Defendant had a positive impact on other participants and was "a leader" in the program. He explained that the Defendant wanted to complete the program, change his lifestyle, and improve himself.

Bill Rammage testified that he was a chaplain at the Warriors Center Drug and Alcohol Rehab in Bolivar. Mr. Rammage met the Defendant through the Life's Healing Choices Class, and a drug and alcohol rehabilitation program. He said that the Defendant was a leader in the program. Mr. Rammage said that the Defendant led Bible studies while in custody and attempted to be a positive influence on others and believed that the Defendant would be a good candidate to complete the Warrior's Center one-year drug and alcohol rehabilitation program to which the Defendant had been accepted.

The Defendant did not testify, but in a letter to the trial court, the Defendant said that he had been addicted to drugs "on and off" for the past thirty years and had never received any type of treatment. The Defendant said that all of his previous criminal behavior was related to his drug addiction. The Defendant said that while in prison, he began a drug addiction class but quit the class because someone had robbed his cell while he was in class. The Defendant said that he was unable to focus on his sobriety and stolen property at the same time. The Defendant said that since that time, he had completed a class that helped him toward his goal of sobriety. The Defendant said that no judge had ever given him the opportunity to attend a drug rehabilitation program, and he asked the court to send him to a long-term drug rehabilitation program.

The trial court considered the evidence presented at the trial and the sentencing hearing. The court considered the information contained in the presentence report, the nature and characteristics of the criminal conduct involved, the evidence offered by the parties regarding mitigating and enhancement factors, and the statistical information provided by the Administrative Office of the Court regarding sentencing practices for these types of offenses. The court considered the Defendant's potential for rehabilitation and treatment. The court found that the Defendant was out on bond for another charge when he was arrested for the offenses in this case. The court found that the Defendant had convictions for aggravated robbery and theft of property valued at more than $1000. The court found that in 2013, the Defendant had been placed on supervised probation and that he was required to complete an "intensive outpatient treatment program" and that the Defendant's assertion that he had never had the opportunity to receive drug treatment was not true.

The trial court applied enhancement factor (1) because the Defendant had a previous history of criminal convictions and behavior based on his fifty-three prior misdemeanor convictions and his extensive history of drug use. *See* T.C.A. section 40-35-114 (1). The court found that the Defendant had never taken advantage of drug treatment opportunities that he had been given in the past. The court asked the Defendant if he were not incarcerated would he be using drugs, and the Defendant replied, "More than likely." The court found that on twenty-four occasions, the Defendant committed new offenses while on probation or parole. The court found that the Defendant had previously been in treatment while he was incarcerated with the Tennessee Department of Correction (TDOC) but that the Defendant dropped out of the program after two weeks. The court found that when the Defendant committed the offenses in this case, he was on bail for drug-related offenses for which he was convicted. The court found that the Defendant had his probation revoked multiple times.

The trial court sentenced the Defendant to concurrent eighteen-year, Range II sentences for his convictions for possession with intent to sell or deliver 0.5 gram or more of methamphetamine, and ordered concurrent sentences of eleven months and twenty-nine days for the misdemeanor offenses, for an effective eighteen-year-sentence. The court recommended that the Defendant receive drug treatment in the TDOC.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, the result of the validated risk and needs assessment conducted by the department and contained in the presentence report, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103, -210; *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2018). "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption." *Bise*, 380 S.W.3d at 705-06. There "is no requirement that such reasoning be particularly lengthy or detailed," and "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Id.* at 706.

The trial court considered the evidence presented at the trial and the sentencing hearing, the presentence report, the Defendant's criminal history, the Defendant's letter to the trial court, counsel's arguments, and enhancement and mitigating factors. The court

reviewed the statistical information provided by the Administrative Office of the Court regarding sentencing practices for these types of offenses. The court considered the Defendant's potential for rehabilitation and drug treatment. The record reflects that the court considered statistical information and that it properly applied the purposes and principles of the Sentencing Act in determining the Defendant's within-range sentence. *See id.* § 40-35-112(a)(2) (2018) (Range II, Class B felony carries a sentence of twelve to twenty years). The court did not abuse its discretion by ordering an eighteen-year sentence. The Defendant is not entitled to relief on this basis.

Based upon the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE