# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 17, 2024

## STATE OF TENNESSEE v. BRANDON EUGENE BEARD

**Appeal from the Criminal Court for Hawkins County**
**No. 21-CR-138       Alex Pearson, Judge**

_____

**No. E2024-00899-CCA-R3-CD**

_____

FILED

JAN 28 2025

Clerk of the Appellate Courts
Rec'd by_____

The Defendant, Brandon Eugene Beard, pleaded guilty to three counts of aggravated assault and one count of being a felon in possession of a handgun. After the plea, but before the sentencing hearing, the State filed a notice to seek enhanced punishment offering exhibits showing that the Defendant qualified as a Range II offender and asking the court to impose consecutive sentences and the maximum sentence. After the hearing, the trial court sentenced the Defendant as a Range II offender to eighteen years for each of the assault convictions to be served concurrently at 85% and to ten years for the handgun conviction to be served at 35% and consecutively to the assault sentences, for a total effective sentence of twenty-eight years. On appeal, the Defendant contends that the trial court erred when it ordered partial consecutive sentencing and when it considered the State's notice to seek enhanced punishment, which the State filed after he pleaded guilty. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which J. ROSS DYER, J., and D. KELLY THOMAS, JR., S.J., joined.

Ethel P. Rhodes, Morristown, Tennessee, for the appellant, Brandon Eugene Beard.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Paul James Hornick, IV, and Bradley Ryan Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's production and discharge of a weapon during a cookout at the home of William Meade, who was the brother of the Defendant's girlfriend,[1] Laura Meade. The discharge of the weapon resulted in both the Defendant and William Meade being shot. For this action, a Hawkins County grand jury indicted the Defendant for three counts of aggravated assault, a Class C felony, and one count of possession of a firearm by a convicted felon, a Class B felony.

## A. Guilty Plea Hearing

On April 5, 2024, the Defendant expressed his intent to enter a plea of guilty to each of the charged offenses. The trial court ensured that the Defendant, aged forty, could read and write, had no drugs or alcohol in his system, and the mental and physical condition to enter his plea. The trial court then said that the sentencing range for the aggravated assault conviction was three to six years for a Range I offender but that the range is determined by the Defendant's prior record.

The parties agreed that Count 1 and 2 involved the same victim, so Count 1 would merge into Count 2. Count 3 involved a different victim. Accordingly, the trial court explained, while the Defendant would enter his plea to all three assault charges, he would only be punished for Count 2 and Count 3. Count 4 involved the possession of a weapon by a convicted felon, a Class B felony, which carried a sentence of eight to twelve years as a Range I standard offender. The trial court informed the Defendant that the sentencing range: "Could be more depending on your prior record. I don't know what your prior record is at this point. We'll find out . . . when we do our sentencing hearing."

The trial court explained lesser-included offenses, which were a possible outcome if the Defendant chose to go to trial. The trial court also ensured the Defendant understood each of the rights he was waiving by entering his guilty pleas. The Defendant expressed understanding and satisfaction with his attorney's representation of him.

The State did not offer a stipulation of facts during the guilty plea hearing. At the hearing, however, the trial court accepted the prosecution report, which included a factual summary. That summary described the events that occurred at the time of the shooting as follows: On July 4, 2021, the Defendant came to the home of one of the victims, William Meade, who was Ms. Meade's brother. The Defendant arrived during a cookout, and Ms. Meade's family did not like him because of previous domestic abuse allegations that she had made against the Defendant. Upon seeing his arrival, Ms. Meade's other brother, Billy Meade, went to confront the Defendant, who was pointing a pistol at him. Billy Meade

---

[1] In the transcript, the Defendant refers to Laura Meade as his "wife." It is unclear from the record whether the Defendant and Ms. Meade were married at the time of the shooting.

and the Defendant "exchanged words" until William Meade came from around the house and tackled the Defendant to the ground. A struggle ensued between the Meade brothers and the Defendant for the pistol. Other family members became involved in the melee, including Ms. Meade. The pistol fired and the bullet struck the Defendant in the groin area and exited his hip. The same bullet then struck William Meade in the lower leg.

After the gunshot, the Defendant and his girlfriend left in their truck and went to their home, where she called 911 to get the Defendant medical attention. The Defendant was flown to Johnson City Medical Center for treatment. Of the witnesses interviewed, most stated that the incident began with Billy Meade confronting the Defendant and the Defendant pulling the pistol and pointing it at Billy Meade. Ms. Meade's statement was the only inconsistent statement, and she said that the Defendant was bringing the gun, which belonged to her, inside the home at her request so that it could be secured and that the Defendant was holding the gun by his side when William Meade tackled him. Investigation revealed that the gun was a Canik Arms 9mm semi-automatic pistol.

## B. Sentencing Hearing

At the Defendant's sentencing hearing, held June 3, 2024, the trial court informed the parties that it had received the pre-sentence investigative report and the State's request for enhanced and consecutive sentencing. The State's request is included in the record as an exhibit. It was filed on May 2, 2024, and stated the facts, the convictions, and the Defendant's prior criminal history, which included at least three felonies and multiple misdemeanors, including driving on a revoked license and domestic assault. The State then articulated for the court the enhancement factors that it believed were applicable, including (1) that the Defendant had more convictions than necessary to establish his range; (3) there was more than one victim; (8) he failed to comply the conditions of release into the community; (9) he possessed or employed a firearm; (10) he had no hesitation to commit a crime when the risk to human life was high; and (12) that he intentionally inflicted serious bodily injury upon another person. T.C.A. § 40-35-114 (1), (3), (8), (9), (10), and (12). The State acknowledged that factors (9) and (12) were also essential elements of their particular crime, but that the other four were independent of any essential element analysis.

Regarding consecutive sentencing, the State asserted that the Defendant was an offender whose record was extensive and that he was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime when the risk to human life was high. T.C.A. § 40-35-115. As a final note, the State indicated that the Defendant had twice failed to appear before the court as required in this case, which also showed he was not a good candidate for a probationary sentence.

3

The Defendant did not object to the introduction of his prior record or the State's motion to enhance his sentence. He offered a statement that he "listened to [my] wife. She asked [him] to go get [the gun] and [he] got it and took it to her." He said he knew it was a mistake to listen to his girlfriend. The Defendant said that, before he could get the gun to his wife, the Meade brothers "jumped" him and the gun went off and shot him and one of the brothers.

Based upon this evidence, the trial court determined that the Defendant was a Range II offender based on his prior felony convictions, which included two aggravated burglary convictions and two burglary of a motor vehicle convictions. The trial court considered all the relevant sentencing factors, and it considered that the Defendant's sentencing range for the B felony was twelve to twenty years and for the C felony convictions was six to ten years. The trial court found that no mitigating factors applied but that there were applicable enhancement factors, including that: (1) the Defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (3) the offense involved more than one victim; (8) the Defendant failed to comply with conditions of his sentence involving release into the community by failing to appear; and (10) that the Defendant had no hesitation about committing a crime when the risk to human life was high. See T.C.A. § 40-35-114 (1), (3), (8), and (10). The trial court found enhancement factor (10) applicable to the possession of a firearm by a convicted felon conviction because the Defendant retrieved a gun during an argument, even if he was following his girlfriend's request.

When addressing consecutive sentencing, the trial court found that the Defendant was an offender whose record of criminal activity was extensive beginning in 2001. The convictions included attempted theft, burglary of a motor vehicle, aggravated burglary, misdemeanor theft, aggravated burglary, and another misdemeanor theft. Additionally, he had been convicted of aggravated criminal trespassing and violating his probation, failing to appear, and driving on a suspended license. The trial court found that these were "extensive prior convictions." See T.C.A. § 40-35-115 (B)(2).

The trial court also found that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. See T.C.A. § 40-35-115 (b)(4). At the time of the offense, the Defendant was a convicted felon prohibited from having a firearm. The trial court stated that, regardless of whether or not he had previously determined if he was going to shoot someone during the "incident," he was not allowed to be in possession of a weapon.

The trial court then sentenced the Defendant to ten years for each of the aggravated assault convictions, to run concurrently to each other. He ordered the Defendant to serve

4

eighteen years for the possession of a firearm by a convicted felon conviction, to run consecutively to the sentences for the aggravated assaults, for a total effective sentence of twenty-eight years. The sentences for the aggravated assault convictions were subject to a thirty-five percent release eligibility date, but the sentence for the firearm conviction was subject to an eighty-five percent release eligibility date.

It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court erred when it ordered him to serve consecutive sentences and when it considered the State's notice of enhanced punishment.

## A. Consecutive Sentencing

The Defendant contends that the trial court erred when it sentenced him to serve consecutive sentences. The State counters that the trial court's sentencing order is supported by the record. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated

5

sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the depart and contained in the presentence report. *See* T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2019).

Where a defendant is convicted of one or more offenses, the trial court has discretion in determining whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a). "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the seven categories in Code section 40-35-115(b). This court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Pollard*, 432 S.W.3d at 861. When imposing consecutive sentences, the court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. §§ 40-35-102(1), -103(2), -103(4); *State v. Imfield*, 70 S.W.3d 698, 708 (Tenn. 2002). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise*, 380 S.W.3d at 705).

Here, the trial court properly considered all the relevant sentencing criteria and articulated detailed, appropriate findings on the record. It found that consecutive sentencing was proper, pursuant to section 40-35-115(b)(2), because the Defendant had a record of extensive criminal activity, including four felony offenses, multiple misdemeanor offenses, and offenses for violating probation and failing to appear in court. This criminal activity spanned a twenty-year period. While many of the more serious convictions occurred twenty years ago, they are still applicable. *State v. Gilliam*, No. E2023-00533-CCA-R3-CD, 2024 WL 1829118, at *4-5 (Tenn. Crim. App. Apr. 26, 2024), *no Tenn. R. App. P. 11 application filed*. We note, however, that his failure to appear occurred in the case under submission, which also supports the trial court's finding that the Defendant's record was extensive.

6

The trial court also properly found that consecutive sentencing was proper based on the Defendant's conduct indicating that he had little regard for human life and no hesitation about committing a crime in which the risk to human life was high. T.C.A. § 40-35-115(b)(4). The record indicates that there was a prior history of negativity between the Defendant and Ms. Meade's family, based on Ms. Meade's prior allegations of domestic assault by the Defendant. The trial court noted that, at the July 4 cookout, there was an "incident," and the Defendant left the cookout and went to his truck to retrieve a weapon. As the trial court noted, even if the Defendant were to be believed and that he only got the weapon because Ms. Meade told him to, he was still aware that he was a felon and not supposed to be in possession of a handgun. Further, given the situation, as the trial court said, no good was to come from bringing a gun into that situation, and someone was likely to get hurt. We conclude that the evidence supports the trial court's findings regarding consecutive sentencing and that the Defendant is not entitled to relief on this issue.

## B. State's Notice of Enhancement

The Defendant next contends that the trial court erred when it sentenced him as a Range II offender because the State filed the notice of enhancement after the sentencing hearing. The State contends that the Defendant waived the issue by failing to object and, even if not waived, the Defendant cannot prove that he was prejudiced.

Tennessee Code Annotated section 40-35-202(a) provides that "[i]f the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial." Similarly, Tennessee Rule of Criminal Procedure 12.3(a) provides:

> Written statements of the district attorney giving notice that the defendant should be sentenced to an enhanced punishment ... shall be filed not less than ten (10) days prior to trial. If the notice is filed later than this time, the trial judge shall grant the defendant, upon motion, a reasonable continuance of the trial.

The statement "must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions." T.C.A. § 40-35-202(a). The notice "provides defendants with fair notice of their exposure to enhanced sentencing, orders plea-bargaining, enables defendants to make informed decisions before pleading guilty, aids defendants in developing trial strategy and preparing for sentencing hearings, and assists defendants 'in evaluating the risks and charting a course of action before trial.'" *State v. Patterson*, 538 S.W.3d 431, 438 (Tenn. 2017) (quoting *State v. Adams*, 788 S.W.2d 557, 559 (Tenn. 1990)).

7

"If notice is filed up to the first day of trial, a defendant must request a continuance to preserve his objection to the sentence enhancement." *State v. Williams*, 558 S.W.3d 633, 640 (Tenn. 2018) (citing State v. Stephenson, 752 S.W.2d 80, 81 (Tenn. 1988)). "Generally, if notice is filed late or is filed timely but is otherwise defective, the defendant must show prejudice before the notice will be rendered ineffective." *State v. Carter*, 121 S.W.3d 579, 585 (Tenn. 2003). However, "[i]f a notice document is so defective as to amount to no notice at all, then the State has not met its burden, and the defendant does not have to show prejudice." *Williams*, 558 S.W.3d at 640. We review the sufficiency of the State's notice to seek enhanced punishment de novo with no presumption of correctness. *Id.* at 639.

Here, the State filed a written notice of its intent to seek enhanced punishment after the Defendant pleaded guilty and one month before the scheduled sentencing. At sentencing, the Defendant neither asked for a continuance, asked to withdraw his guilty plea based on the notice, nor objected to the trial court's consideration of the State's notice. Also, during the guilty plea hearing, the trial court informed the Defendant that it was not certain of the Defendant's applicable sentencing range because it was not certain of the Defendant's prior convictions and that it would determine the applicable number of convictions before sentencing. At sentencing, the trial court considered the Defendant's prior convictions and determined that he qualified as a Range II offender.

We conclude that the Defendant has waived our review of this issue by his failure to object to the State's notice at the sentencing hearing. Issues not raised before the trial court are typically waived on appeal. *See* Tenn. R. App. P. 3(e); *State v. Maddin*, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005). Waiver aside, to be entitled to relief, the Defendant must show that he was prejudiced by the late-filed notice. He has failed to make such a showing. The Defendant knew of his prior convictions and knew at the time of his guilty plea that the prior convictions might affect the applicable sentencing range, having been so informed by the trial court. Accordingly, we conclude that he cannot show prejudice, and he is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

ROBERT W. WEDEMEYER, JUDGE

8